Hull v. Louth, Guardian, et al.

Filed Jan. 27, 1887.

No. 11,520.

HULL v. LOUTH, GUARDIAN, ET AL.

DEED.—*Insanity of Grantor.—Disaffirmance.—Restitution.*—E., a person of unsound mind, incapable of comprehending the nature of the transaction, without any valuable consideration, conveyed her real estate to T. by deed, which was duly recorded. To secure a loan of money with which to pay off delinquent taxes and other liens against the land, T. executed a mortgage thereon to H., who had no knowledge of E.'s unsoundness of mind, but advanced the money and accepted the security in good faith, relying on the public records. E. received no benefit from the money, either in person or estate. In a suit by H. to foreclose the mortgage,

*Held*, that although there was no disaffirmance by E. or her guardian, and no offer to make restitution of the money advanced by H., the deed was at least voidable, and that H. could not recover, as against E., who was entitled to have her title quieted as against him, by cross complaint.

SAME.—*Person of Unsound Mind.*—Where a person of unsound mind is brought into court as a defendant, to answer as to any interest he may have in real estate theretofore conveyed by him, the filing of an answer and cross complaint by the guardian of such person is a sufficient disaffirmance of such conveyance.

SAME.—*Consideration.—Insanity of Grantor.—Good Faith.*—A person holding land, for which he has paid no consideration, can not defeat an action to set aside his deed on account of the insanity of his grantor, by showing that the grantor had the appearance of being mentally sound, and that he accepted the deed without knowledge of the insanity of such grantor.

SAME.—*Burden of Proof.*—When it is established that the grantor of real estate was a person of unsound mind at the time the conveyance was made, the burden is upon the other party to show that he accepted the conveyance in ignorance of such mental unsoundness, if he relies upon such fact.

APPEAL.—*Practice.—Long-Hand Manuscript.—Bill of Exceptions.*—Where the long-hand manuscript of the evidence is filed with, and as a part of the bill of exceptions, that is a sufficient filing; and when thus filed, it may be taken from the bill of exceptions and made a part of the record on appeal without being copied.

SAME.—*Practice.—Bill of Exceptions.*—Where the record containing a bill of exceptions shows that such bill was within the proper time presented to the judge, certified by him as correct, and ordered to be made part of the record, and bears a certificate of the clerk that such record is a full and complete transcript of the proceedings, papers filed, etc., it sufficiently shows a filing of such bill of exceptions within the proper time, whether it is endorsed as having been so filed or not.

SPECIAL FINDING.—*Exceptions.—Practice.*—Where the court finds the facts specially and states conclusions of law thereon, exceptions to the latter must be taken at the time the decision is made, and exceptions taken afterwards are not available, although the opposite party is present and does not object.

SAME.—*Practice.—Motion for Venire de Novo.*—Where a special finding of facts is so defective, ambiguous or uncertain, that it ought to be corrected, the proper remedy is by a motion for a *venire de novo.*

WITNESS.—*Practice.—Medical Examination of Party.*—Where one of the questions at issue is as to the sanity or insanity of one of the parties at a certain time, it is not error for the court to refuse a request of the opposite party, made during the trial, to have such party put in charge of physicians for the purpose of having an examination as to her mental condition, there being no offer to show that her condition was substantially the same as at the time in question.

From the Tippecanoe Superior Court.

*D. Turpie, G. O. Behm, A. O. Behm, H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellant.

*B. W. Langdon* and *T. F. Gaylord,* for appellees.

ZOLLARS, J.—Appellant instituted this suit to recover judgment on a promissory note, and to foreclose a mortgage securing the same. The note and mortgage were executed by appellee Henry C. Taylor, on the 2d day of May, 1877. Emma J. Taylor and Emanuel Eichholtz were made parties

defendants to the suit, the averment in the complaint as to them being that they claimed some interest in, or lien upon, the real estate described in the mortgage.

Upon the petition of Clark Louth, as guardian of Emma J. Taylor, he was let in to make a defence, and filed an answer in which he alleged that in 1862, Chesebrough Taylor, the father of Emma J. Taylor, was the owner of the land described in the mortgage; that in that year, he and his wife conveyed the same in fee simple to said Emma J., and that the deed was recorded in 1867; that in June, 1871, Emma J. executed a deed of conveyance of said land to appellee Henry C. Taylor, without any valuable consideration, and that the deed was duly recorded in the same month; that subsequent to the recording of the deed to him, Henry C. executed the note and mortgage in suit; that in 1883, Emma J. was adjudged to be, and to always have been, a person of unsound mind, and incapable of managing her estate, and that Louth was appointed her guardian; that, in fact, at the time she executed the deed to Henry C. she was, and always had been, a person of unsound mind, and incapable of executing or understanding the deed, or of managing her estate; that by reason thereof, Henry C. acquired no title to the land, and that, therefore, the mortgage in suit was not a lien upon the land.

The guardian also filed a cross complaint against the appellant and the other defendants, appellees herein.

The averments in the cross complaint, as to the mortgage, and the deed from Emma J. to Henry C., are substantially the same as in the answer.

There are additional averments, that Eichholtz claims to own the land by virtue of a judgment against Henry C., and a sheriff's sale thereon; that upon the recording of her deed from her father, Emma J. was put in possession of the land, and has ever since been, and now is, in the possession thereof.

The prayer is, that appellant's mortgage, and the deed

from Emma J. to Henry C., be declared of no effect, and that her title to the land be quieted as against all of the other parties to the suit.

Appellant answered the cross complaint, in substance, that in 1871, Emma J., by a warranty deed, conveyed the land to Henry C. Taylor, and that the deed was properly recorded in the same month; that in 1874, Henry C., then living on the land, executed a mortgage thereon to one Holmes, to secure a loan of $500, and at the same time executed another mortgage thereon to one Jones, to secure $126, which mortgages were duly recorded; that the note and mortgage in suit were given to secure a loan of money to pay off the two prior mortgages, and to pay delinquent taxes against the land; that appellant loaned the money to Henry C. in good faith, relying wholly upon the public records of deeds and mortgages, and without any knowledge that Emma J. was suspected of being of unsound mind; that up to the time when she executed the deed to her son, Henry C., there had been no question made by any one as to the soundness of her mind, and that she had managed her affairs without any appearance of mental incapacity.

The third paragraph of appellant's answer to the cross complaint was, in substance, that when he loaned the money to Henry C., and accepted the note and mortgage in suit, and before Emma J. had been adjudged of unsound mind, Henry C. was in possession of the land, using and cultivating it with her knowledge and consent; that appellant made the loan to Henry C., and paid to him the amount of the note and mortgage, without any knowledge that Emma J. claimed to have any interest in the land, or that she was of unsound mind, and without any fraud, or undue advantage, and for the purpose of enabling Henry C. to pay delinquent taxes, and other encumbrances upon the land, created by him in the support of his mother, Emma J., and himself, while living on the land.

Appellant's replies to the guardian's answer are substantially the same as his answers to the cross complaint.

As will be observed, these averments in the guardian's answer and cross complaint are not denied in or by appellant's answers and replies, viz.: The conveyance from Emma J. to Henry C. was without any valuable consideration. At the time of the conveyance, she was of unsound mind, incapable of making or understanding the deed, or of managing her estate.

She was adjudged to be of unsound mind, and placed under guardianship after this suit was commenced.

The demurrer to appellant's answers and replies admitted as true the averments, that the deeds and mortgages therein mentioned were recorded before appellant made the loan to, and accepted the mortgage from, Henry C.; that appellant loaned to Henry C., while he was living on the land, $800, to enable him to pay off the prior mortgages placed on the land by him, and to enable him to pay delinquent taxes against the land; that up to the time Emma J. executed the deed to Henry C., she managed her estate without any appearance of mental incapacity, and that up to that time no question had been made by any one as to the soundness of her mind; that appellant made the loan upon the faith of the public records of deeds and mortgages, in good faith, and without any knowledge that Emma J. was of unsound mind. It is not averred, as will be observed, in the answer and cross complaint by the guardian, that appellant knew that the deed from Emma J. to Henry C. was without any valuable consideration; nor is it averred in appellant's answers and replies, that he did not have such knowledge. It is not averred in his answers and replies, that the money received from him was actually applied by Henry C. in payment of delinquent taxes and the prior mortgages; nor is it averred that the delinquent taxes accrued before the execution of the deed to Henry C. It is not averred in the guardian's answer and cross complaint, that Henry C. had knowledge of the un--

soundness of the mind of Emma J. at the time he accepted the deed from her. Neither is it averred in appellant's answers and replies, that he did not have such knowledge.

Whether the deed from Emma J. to Henry C. be regarded as void, or as voidable, it must be clear, upon the undisputed facts stated in the pleadings, that, as between them, her guardian has the right, in this action, to have the deed set aside, and the title to the land quieted in her.

It can not be said, that as between them, she was bound to make restitution, and thus place the parties in statu quo, because she received nothing for the conveyance, nor did Henry C. suffer any loss or inconvenience thereby.

It is averred in appellant's answers and replies, that he loaned the money to Henry C. to enable him to pay off the prior mortgages and delinquent taxes against the land. The prior mortgages were put upon the land by Henry C. after he received the deed from Emma J., and it is in no way made to appear by the averments in any of the pleadings, that either of those mortgages was given to secure a debt or debts due from her, or that she received any of the money borrowed by Henry C., to secure the payment of which one of the mortgages was given by him, or that any of it was used or applied in any way for her benefit.

It is not averred in any of the pleadings, that the delinquent taxes accrued prior to her deed to Henry C.; nor is it averred in any of the pleadings that the money received from appellant by Henry C. was applied by him in payment of the prior mortgages or the delinquent taxes.

In short, there is nothing in appellant's answers and replies to meet the averments in the guardian's answer and cross complaint, that Emma J. received nothing for the conveyance from her to Henry C. Northwestern Mut. F. Ins. Co. v. Blankenship, 94 Ind. 535 (48 Am. R. 185). Nor can it be said, that as a condition precedent to the setting aside of the deed, she, or her guardian, must have disaffirmed the deed. As her mental incapacity has been continuous, she could not

disaffirm, if that were necessary ; and as her guardian was not appointed until after the suit was commenced, he could not have disaffirmed the deed before the bringing of the suit.

The filing of the answer and cross complaint by the guardian was a sufficient disaffirmance on his part, as the representative of Emma J. When persons of unsound mind are brought into court by a suit to enforce contracts made by them, it will not do to hold that they may not, by their guardian, make the defence that, when the contract was made, they were of unsound mind. *Northwestern Mut. F. Ins. Co.* v. *Blankenship, supra.* See, also, *Copenrath* v. *Kienby*, 83 Ind. 18; *Musselman* v. *Cravens*, 47 Ind. 1.

It is averred in appellant's answers and replies, that up to the time when Emma J. made the deed to Henry C., she had managed her business without any appearance of incapacity on her part, but it is nowhere averred, that at the time the deed was executed, she was not of unsound mind, and incapable of understanding the deed, or its effect. Nor is it anywhere averred that at the time the deed was made, Henry C. did not know that she was of unsound mind, and wholly incapable of comprehending the force and effect of the deed. But if we should assume that Henry C. did not know of her mental infirmity when he accepted the deed, it would not alter the case as to him. A person, holding land for which he has paid no consideration, can not defeat an action to set aside his deed on account of the insanity of his grantor, by simply showing that the grantor had the appearance of being mentally sound, and that he accepted the deed without knowledge of the fact that such grantor was insane.

In some cases, equity will protect persons dealing in good faith, and without knowledge, with lunatics who appear to be rational, but in no case will a conveyance of real estate from, or a contract with, such a person be upheld as between the immediate parties, when the transaction is without any

consideration. In such a case, as the insane person has received no benefit, and the other party suffered no loss, no equity can arise in favor of the other party. Buswell Insan., section 402, and cases there cited.

The important question presented by the pleadings is, whether the defence of insanity may be made against appellant, who, acting upon the faith of the public records of deeds and mortgages, without knowledge of the fact that Emma J. was a person of unsound mind at the time she executed the deed to Henry C., in good faith furnished money to Henry C. and accepted from him the mortgage in suit.

Appellant's pleadings seem to have been drawn largely upon the theory that he could be protected by showing that the conveyance from Emma J. to Henry C. was such that neither she nor her guardian could avoid it in this action, because it had not been disaffirmed, and because the parties had not been placed in statu quo.

Appellant can not successfully insist that there must have been a disaffirmance of the deed from Emma J. to Henry C. As already stated, she could not disaffirm, because of her insanity. Her guardian could not have disaffirmed prior to the bringing of the suit, because he had not been appointed at that time. Appellant brought Emma J. into court to answer his bill, and the filing of the answer and cross complaint was a sufficient disaffirmance, both as to him and Henry C., if, in any event, under the facts of the case as shown by the pleadings, a disaffirmance could have been necessary.

Neither can appellant successfully insist that his mortgage shall be protected and enforced, simply because neither Emma J. nor her guardian have refunded, or offered to refund, to him the money he advanced to Henry C. upon the faith of the mortgage. As already stated, it is admitted, that there was no consideration for the deed from Emma J. to Henry C., and it is not shown that she received any of the money

advanced by appellant, nor that any of it was, in any way, applied for her use and benefit.

Nor can appellant's mortgage be upheld upon the ground that Henry C. was an innocent purchaser from Emma J. In the first place, as we have seen, there was no consideration for the deed; and in the second place, it is not shown that Henry C. did not know that Emma J. was a person of unsound mind at the time the deed was executed. If he had paid a consideration, and the transaction were one that might in any event be upheld, it would still be necessary that Henry C. should have paid the consideration, and accepted the deed, in ignorance of the fact that Emma J. was a person of unsound mind.

When it is established by averment, or by evidence, that the grantor was a person of unsound mind at the time the conveyance was made, the burden is upon the other party to the transaction to show, amongst other things, that he accepted the conveyance in ignorance of such mental unsoundness. *Riggs* v. *American Tract Society*, 84 N. Y. 330; *Fulwider* v. *Ingels*, 87 Ind. 414.

Appellant's case, upon the pleadings, is simply this: Emma J., an insane person, conveyed her land to Henry C. without any consideration, who, for aught that appears, accepted the deed with knowledge of her insanity. As against him, she had the right, through her guardian, to have the deed set aside, and the title to the land quieted in her. Appellant, relying upon the public records of deeds and mortgages, advanced money to Henry C., and accepted the mortgage from him, without knowledge that Emma J. was insane at the time she executed the deed. There is nothing to show that any of the money so advanced was received by Emma J., nor that any portion of it was used, or applied for her benefit. Appellant does not allege in any of his pleadings, that he was ignorant of the fact that there was no consideration for the deed from Emma J. In short, it is not shown that there are any equities as between her and appellant. If his mortgage

may be upheld and enforced against the land, it must be upon the ground that the deed from Emma J. to Henry C. was recorded; that, relying upon the public records of deeds and mortgages, and being ignorant that Emma J. was a person of unsound mind, he advanced money to Henry C. and accepted the mortgage from him.

His counsel argue, that deeds from persons of unsound mind, before an inquest of lunacy, are not void, but voidable only ; that the ground upon which such deeds are set aside is fraud, and that fraud, which overthrows such deeds as between immediate parties, will not affect the title of innocent purchasers from the rational party. The position of counsel is too narrow. If it were admitted to be correct, as a rule of law, it would follow, that in no case can the property of a person of unsound mind be reclaimed, unless actual fraud has been practiced, or the conveyance has been accepted with knowledge of such unsoundness of mind, which knowledge, of itself, might amount to fraud. But such is not the law, as we understand it. The courts scrutinize with jealous care all contracts made with persons of unsound mind, and will set them aside if fraud has been practiced.

And so, in all cases, fraud vitiates contracts. But in the case of contracts with persons of unsound mind, the courts do not stop with the inquiry as to whether or not actual fraud may have intervened. Such persons are regarded as within the watchful and protecting care of the courts, and when it is discovered that they have entered into contracts, except in some cases which need not here be enumerated, such contracts will be set aside, because of their mental infirmity, whether there has been actual fraud or not. But if it should be conceded that fraud alone is the ground upon which such contracts are set aside, it would not follow, necessarily, that third parties should be protected as in cases of fraud, where the contracting parties are mentally sound, and capable of managing their property and understanding the force and effect of contracts. In such a case, two rational minds

meet, agree upon, and, presumably, comprehend the contract. One of the parties, by shrewdness, or by deceit and false representations, may overreach the other, yet that other is rational, and capable of yielding assent to the contract as made. For this reason, he will not be heard to urge the fraud to the detriment of innocent third parties. In some cases, too, one of the parties may have been able to avoid the fraud of the other, by the exercise of reasonable care. With persons, such as it is alleged Emma J. Taylor was and is, the case is radically different. They are wanting in that which is essential in all contracts, the mental ability to comprehend and yield assent to the contract. They can not, therefore, in any case, be chargeable with want of care in being over-reached by the other contracting party.

As it is alleged here, that Emma J. Taylor, at the time she executed the deed to Henry C., had the appearance of a sane and rational person, and it does not affirmatively appear that Henry C. had knowledge of the fact that she was a person of unsound mind, we assume for the purpose of this decision, and without stating the reasons or going into an examination of the authorities, that the contract or deed was not void, but voidable only. It was not voidable on the ground of fraud, because no actual fraud is alleged, but voidable because Emma J. was a person of unsound mind. And being voidable on this ground, it is voidable as against appellant. This conclusion, we think, is supported by reason and authority.

In the case of *Somers* v. *Pumphrey*, 24 Ind. 231 (238), in speaking of an instruction refused below, this court said: "We have already shown, that if the defendants, Isaac and Jonathan Somers, were innocent purchasers, in good faith, for a valuable consideration, their title would not be affected by the fraud of Golvin Somers, or Steinman, in procuring Elizabeth to execute the deed to the latter. But this instruction goes further, and assumes that the same rule would apply if Elizabeth was of unsound mind at the time she executed the

deed. * * * The contract of a *non compos mentis* differs materially from one procured by fraud from a person of sound mind. In the latter case, the contract is made by one of sufficient capacity, and competent to make it, and his mind has consented to it, but that consent has been induced by the fraud of the other contracting party; but, if the person is *non compos mentis*, there is a want of capacity to contract; he does not, in a legal sense, consent, because there is a want of that mental capacity essential to a legal consent. In this respect, the case seems to be analogous to the contract of an infant, in whom there is, also, a want of capacity to contract, and it has been held that a deed made by an infant might be avoided by his heirs, though the estate had passed into the hands of a *bona fide* purchaser, for a valuable consideration. *Doe, ex dem. Moore*, v. *Abernathy*, 7 Blackf. 442. We think the instruction was correctly refused."

In the case of *Nichol* v. *Thomas*, 53 Ind. 42 (53) it was said: "The conveyance of an insane person, but who is apparently sane, stands, in all substantial respects, as the conveyance of an infant."

The case of *McClain* v. *Davis*, 77 Ind. 419, involved commercial paper in the hands of innocent holders. It was said: "There was nothing received in consideration of the contract under consideration, of which it can be said that restitution should be made before a disaffirmance should be permitted; and it is no objection that the note had passed, before maturity, into the hands of an endorsee. Commercial paper is not an exception to the rule which permits a disaffirmance by any one who was of unsound mind at the time of becoming a party thereto. The purchaser of such paper takes with constructive notice of all legal disabilities of the parties, such as infancy, coverture, and unsoundness of mind."

The cases above cited were approved in the case of *Northwestern Mutual Fire Ins. Co.* v. *Blankenship*, 94 Ind. 535. The case of *Somers* v. *Pumphrey*, was also approved in the

case of *Musselman* v. *Cravens*, 47 Ind. 1 (9). An act of 1852, and still in force, provides that "Persons of unsound mind and infants may not alien lands nor any interest therein." 1 R. S. 1876, p. 361, R. S. 1881, section 2917.

In the case of *Freed* v. *Brown*, 55 Ind. 310 (317), in speaking of that act, it was said: "It will be seen from this provision, that persons of unsound mind and infants, so far as the mere right or power to convey lands is concerned, are classed together and clothed with the same disability. It has always been held, however, that the deed of an infant is not void, but merely voidable. * * * We know of no sound reason, either in principle or policy, why the same doctrine should not ordinarily apply to the deeds of persons of unsound mind, nor why such persons, upon the removal of their disability, should not have the same right or power, as infants have, to ratify or to disaffirm their deeds, made while under disability."

In speaking of conveyances by persons of unsound mind, and the rights of innocent purchasers, the Supreme Court of Michigan, in the case of *Rogers* v. *Blackwell*, 49 Mich. 192, said: "It is further claimed that the defendant mortgagees stand in the relation of *bona fide* purchasers and should therefore be protected. But to protect them would be to give force and effect, to that extent, to the deed of conveyance; to treat it as a valid subsisting instrument; to not consider it as voidable but as valid. If the acts of an insane person can thus be made valid and binding, an easy method is thereby found for disposing of his property. We are of opinion that the complainant is entitled to the relief prayed for."

In the case of *Hovey* v. *Hobson*, 53 Maine, 451, after holding that a deed of a person of unsound mind, not under guardianship, obtained without fraud, and for an adequate consideration, and that has not been ratified, is not void, but voidable, it was said, in speaking of the rights of a third person as an innocent purchaser: "It is apparent that the

protection of the insane and the idiotic will be materially diminished, if the heirs can not follow the property conveyed, but are limited in their right of avoidance to the immediate grantee of such insane or idiotic person.   The acts of lunatics and infants are treated as analogous, and subject to the same rules.  *Key* v. *Davis*, 1 Md. 32;  *Hume* v. *Barton*, 1 Ridg. Pl. 77.   'The grants of infants and persons *non compos* are parallel both in law and reason.'  *Thompson* v. *Leach*, 3 Mod. 310. The law is well settled that a minor when of age may avoid his deed given when an infant.   He may do this not merely against his grantee, but he may follow the title wherever it may be found and recover his land."

After a further discussion of the right of an infant to thus reclaim his land  and the reasons upon which that right rests, it was further said :  " In  this view of the subject, no purchaser under an infant's deed is innocent in the eye of the law, until the title has been confirmed by the matured consent of the grantor."  And still further :  " When a man is defrauded, he may, as against his grantee, avoid his deed, but not against those deriving in good faith and for an adequate consideration a title from such grantee.   He has  the ability to convey an indefeasible title,—and  he does convey such title to all *bona fide* purchasers from his grantee.   The insane man has not the power to convey such indefeasible title.   This incapacity inheres in all titles derived from him.   The grantee, whose title is thus derived, must rely on the covenants of his deed.   He risks the capacity to convey of all through whom his title has passed.   The right of infants and of the insane alike to avoid their contracts is an absolute and paramount right, superior to all equities of other persons, and  may be exercised against *bona fide* purchasers from the grantee."

Other holdings in that case may not be reconcilable with rulings by this court, and hence we here approve so much of the case only as is to the effect that persons of unsound mind are not estopped to reclaim their land, simply because it may

have passed into the hands of third persons as innocent pur-chasers.

We here repeat, what has before been stated, that in the case before us, as made by the pleadings, there is no question of restitution, because Emma J. received nothing directly or indirectly for her land.

In the case of *Wirebach* v. *First Nat'l Bank*, 97 Pa. St. 543 (39 Am. R. 821), it was held that an accommodation en-dorser of a promissory note, who receives no benefit there-from either to himself or his estate, may defend against a *bona fide* holder on the ground that he was *non compos mentis* at the time of the endorsement; and this though the holder had at the time of the transfer to him no knowledge of the en-dorser's lunacy. In that case the court quoted with approval from the case of *Moore* v. *Hershey*, 90 Pa. St. 196, the follow-ing: "We place our ruling upon the broad ground that the principle of commercial law above referred to does not apply to commercial paper made by madmen. * * * The true rule applicable to such cases is, that while the purchaser of a prom-issory note is not bound to inquire into its consideration, he is affected by the status of the maker, as in the case of a mar-ried woman or a minor. In neither of these cases can he re-cover against the maker." It was further said: "If the holder could recover against one who was insane when he en-dorsed or made the note without consideration therefor, no wider door could be opened for the swindler to despoil such helpless persons of their estates. An infant who makes or en-dorses a note may, by his representative, plead his infancy as a complete defence. In like manner a lunatic may plead in-sanity and want of consideration. The consideration respects himself, not the holder who may have given value to his en-dorser. If the fact that the holder had paid value were enough, the lunatic could not defend for fraud upon him or for want of consideration; then an innocent holder could re-cover, though the judgment would sweep away the lunatic's entire estate, and he had not been benefited a farthing. * * *

The holder of a madman's note stands in no better position than the payee."

Mr. Bishop, in his work on contracts, at section 297, in speaking of fraud, infancy and insanity, and the rights of third persons as innocent purchasers, says : " If we look for the true reason why, when a man has but a voidable title, he can make, what he has not, a complete one in his grantee, we shall probably find it in the equitable view that he who suffered his own weakness to be imposed upon, and was therefore in a measure to blame, should bear loss rather than the meritorious third person who was clear of every fault. In a case of insanity, the considerations are reversed. To the insane person, not even carelessness can be attributed. And the third person was in a degree careless ; because, insanity being usually a permanent condition, he could ascertain its existence by inquiry, as a third person could not a fraud. Therefore, the rule ought to be, that, if real estate, for example, has by the deed of an insane man passed to a grantee who has conveyed it to a third person, though for its full value, and without notice, this third person should have a mere defeasible seizin, like his grantor's."

The above authorities, from which we have made the copious quotations, make strong our conclusion, that appellant may not enforce his mortgage against the land, simply because, in good faith, without knowledge of the mental imbecility of Emma J., and in reliance upon the public records, he advanced money to Henry C., and accepted from him the mortgage. They accord to Emma J. the same right to reclaim her land that is accorded to infants under like circumstances, that is, the right to reclaim the land from an innocent third person, who may have purchased it from her grantee. That an infant has such a right, is settled in this State by the adjudications of this court. *Miles* v. *Lingerman,* 24 Ind. 385 ; *Richardson* v. *Pate,* 93 Ind. 423 (47 Am. R. 374) ; *Wiley* v. *Wilson,* 77 Ind. 596 ; *Law* v. *Long,* 41 Ind. 586.

Indeed, it would seem that if there should be any differ-ence between the case of infants and that of a person so im-becile in mind as Emma J. is shown by the pleadings to have been, and to still be, that difference ought to be in favor of the latter.

A person under the age of majority, with a normal mind, may have discretion to understand the force and effect of a contract entered into, and so, the force and effect of a deed for his lands. A person, such as Emma J. is shown to have been, could have no just conception of what she was doing in executing the deed. See *Burke* v. *Allen,* 9 Foster (N. H.) 106 (117).

However that may be, we are clear that under the aver-ments in the pleadings, Emma J., by her guardian, is not estopped to reclaim the land, and have her title quieted as against any claim of appellant under his mortgage.

The general rule is, that no one can convey a better title than he holds. Under that general rule, Henry C. could con-vey no better title than he had under his deed from Emma J. On account of her mental imbecility, that title was not indefeasible. The most that can be said for it is, that it may not have been void, but voidable.

The protection extended to innocent purchasers of real estate, rests upon the doctrine of estoppel. The theory is, that the grantor has done something, or omitted to do some-thing, which has induced a third person to act upon the ap-pearance of things, and to invest his money in the land. In other words, some act must be done, or there must be some omission which would render the avoidance of the convey-ance a fraud upon the person who invested his money, rely-ing upon the act done, or the appearance of things caused by such omission. It is impossible to conceive how Emma J., in the mental condition she is shown to have been, could have done anything, or been guilty of omission, which could work an estoppel against her. She had no communication or dealings with appellant. She did not cause her deed to

Henry C. to be recorded, and if she had, that act ought not to estop her, because she had no more mental ability to comprehend its meaning than she had to comprehend what she was doing in executing the deed. She could not be guilty of wrong in a business transaction, because she lacked the ability to bind herself by such a transaction. And for want of such ability, she could not be guilty of an omission that would estop her. But, in fact, the only thing she did, was to execute the deed to Henry C. She thus put it in his power to cause a record of it to be made that might mislead others. But for that act she is not responsible, for the same reason that she was not mentally competent to execute the deed.

What we have said, is limited to the case before us, as made by the pleadings. If it were shown that a consideration had passed from Henry C. to Emma J. for the deed, or if it were shown that the money advanced by appellant, and received by Henry C., has been used and applied for the use and benefit of Emma J., possibly the case might be different. What the rule in that case might be, we do not decide, because the pleadings do not make such a case.

Here, there are no equities as between Emma J. and Henry C., because there was no consideration for the deed, either by or of anything advantageous to her, or detrimental to him. Neither are there equities as between her and appellant, because she had no dealings with him, and no part of the money advanced by him to Henry C. was used or applied for her benefit. It results from what we have said, that the court below did not err in sustaining the demurrers to appellant's pleadings.

At the request of appellant, the court below made a special finding of the facts. Appellant now insists that the conclusions of law, based on the facts so found, are erroneous, and that, therefore, the judgment in favor of Emma J. should be reversed.

Appellees' counsel, on the other hand, contend that appel-

Hull *v.* Louth, Guardian, *et al.*

lant did not preserve an exception to the conclusions of law in such a manner as to present any question here. That contention can not be disregarded without disregarding the statutory provision as to the time at which such an exception must be taken.

The special finding of facts and conclusions of law thereon were announced, and filed, on the 31st day of December, 1883. No exception was taken to the conclusions of law on that day.

Nothing further was done in the case until the 3d day of January, 1884. Of the proceedings in the case on that day, there is this entry: " Come the parties, appearing as heretofore, and the plaintiff (appellant) now excepts to the special finding of the court, and the conclusions of law therein contained, and heretofore filed," etc.

It is settled by the decisions of this court, that in order to save any question for review here, in a case like this, an exception to the conclusions of law must be taken at the time the decision is made. *Smith* v. *McKean*, 99 Ind. 101 ; *Kolle* v. *Foltz*, 74 Ind. 54; *Johnson* v. *Bell*, 10 Ind. 363 ; *Dickson* v. *Rose*, 87 Ind. 103; *Coan* v. *Grimes*, 63 Ind. 21 (27); *Dickson* v. *Lambert*, 98 Ind. 487 ; *Cincinnati, etc., R. R. Co.* v. *Leviston*, 97 Ind. 488.

It is argued by appellant's counsel, however, that as appellees were present in court on the 3d day of January, 1884, when the court noted the exception to the conclusions of law, and made no objection to the exception then taken and noted, the exception may be made available ; in other words, that appellees, by their silence, waived the objection which they now make.

We are unable to understand how the silence of appellees can, as to them, operate as a waiver, or in any way render the exception available, as it might have been if taken at the proper time. The statute requires, that in order to save any question, by an exception to the conclusions of law, it must be taken at the time the decision is made.

In this case it was not so taken. The taking and noting of an exception, several days subsequent to the decision, did not and could not have the effect of making the exception then taken relate back to the time when it ought to have been taken. We do not see how the action of the court in permitting appellant to except on the 3d day of January, 1884, and in noting that exception, although without objection by appellees, can in any way affect their rights.

The important question is, not when, and under what circumstances was the exception noted, but when was it, in fact, taken. It is not claimed that it was taken at the time the decision was made; indeed, the exception as noted, shows that it was taken to a decision made prior to the time when it was taken and noted.

A former statute provided, as does the statute now in force, with an exception not material here, that a motion for a new trial must be filed at the term at which the verdict or decision is rendered.

It has been held in a number of cases, that, under those statutes, such a motion may be filed at a subsequent term, by the agreement of the parties, and that if filed at a subsequent term, without objection from the party adversely interested, when he might have objected, such want of objection will be taken as a waiver of the objection that the motion was not filed within the time fixed by the statute. There is some analogy between such a case and the case before us, but we think the analogy is not so strong as to make the rulings in those cases conclusive here. A motion for a new trial invites and requires further action by the court.

After the court and the parties have acted on such a motion, there is reason in saying that the parties should not be allowed to say that the motion was filed too late.

An exception, such as that taken in this case, does not require any action by the court, or the parties, and hence appellant can not say that he was in any way misled by the silence of appellees.

It is further contended by appellees, that no question is presented by the assignment, alleging error in overruling appellant's motion for a new trial, for the reason that the record does not show that the bill of exceptions was filed within the time allowed by the court, or filed at all, and especially, that it does not show that the long-hand manuscript of the evidence was filed in the clerk's office.

On the 12th day of January, 1884, the court overruled appellant's motion for a new trial, and granted to him forty days within which to file a bill of exceptions.

The clerk below has copied into the transcript an entry made by him, in which it is stated that on the 23d day of January, 1884, appellant presented to the judge, in open court, a bill of exceptions for his signature, and that it was, at that time, signed. At the conclusion of that entry, is this: "Which bill of exceptions reads as follows, to wit:" Immediately following that statement in the record, is a bill of exceptions. At the end of the bill is the signature of the judge. Immediately preceding that signature is this: "And the court, on the plaintiff's motion, hereby certifies, that the foregoing is a true bill of exceptions, setting forth all the evidence given on the trial of said cause. And the same is ordered to be made a part of the record of said cause. Done this 28th day of January, A. D. 1884."

It is recited in the bill, that Joseph W. Brackenridge, a short-hand reporter, was appointed and sworn to report the evidence, etc. Preceding the signature of the judge, and in the body of the bill, there is a long-hand manuscript of the evidence, attached to which, at the close, is a certificate by Mr. Brackenridge, in which he certifies that "the foregoing is a full, true and complete long-hand manuscript of all the evidence given in the foregoing entitled cause, taken and made from a *verbatim* short-hand report," etc.

In the certificate of the clerk below to the transcript, it is stated that "the foregoing is a full and complete transcript of the proceedings had, papers filed, and judgment rendered

in the above entitled cause, and also the long-hand manu-script of the short-hand reporter, sworn in said cause, which is filed herein and made part of the record."

It thus appears that the record consists of a transcript of the proceedings had, papers filed, etc. In other words, the transcript contains copies of such papers only as were filed. A bill of exceptions, including the long-hand manuscript of the evidence, made a part of it when filed, is clearly a paper in the cause. It is thus made to appear that the bill of exceptions was filed. It also appears that it was filed within the time fixed by the court.

'The time given was forty days from the 12th day of January, 1884. The transcript was completed, and the clerk's certificate attached on the 15th day of February, 1884. It thus necessarily appears that the bill of exceptions was filed within the time given by the court. *Armstrong* v. *Harshman*, 93 Ind. 216.

It is further contended by appellees' counsel, that there is nothing to show that the long-hand manuscript of the evidence was filed in the clerk's office separate and apart from the bill of exceptions, and prior to its being incorporated therein.

The bill of exceptions, as we have seen, was filed within the time given. The long-hand manuscript of the evidence was a part of the bill, and was, therefore, filed. It is not necessary to the filing of a paper that it shall be endorsed as having been so filed. Such an endorsement is the evidence of, but not the filing. A paper is filed when it is delivered to the proper officer, and by him received to be kept on file. *Powers* v. *State*, 87 Ind. 144. The certificate of the clerk shows too, pretty clearly, that the long-hand manuscript of the evidence, in the record before us, was also filed, separate and apart from the bill of exceptions of which it was made a part. Whether so filed before the bill was filed, does not appear. Nor do we think it essential that it should so appear. The statute, section 1410, R. S. 1881, is somewhat

confused, but in our judgment, if the long-hand manuscript of the evidence is filed with, and as a part of, the bill of exceptions, that is sufficient; and when thus filed, it may be taken from the bill of exceptions and be made a part of the record on appeal to this court, without being copied. Such is the scope of the rulings in the later cases. *Williams* v. *Pendleton, etc., T. P. Co.,* 76 Ind. 87; *Marshall* v. *State, ex rel.,* 107 Ind. 173; *Lowery* v. *Carver,* 104 Ind. 447; *Dennis* v. *State,* 103 Ind. 142; *Brehm* v. *State,* 90 Ind. 140; *Lee* v. *State, ex rel.,* 88 Ind. 256; *Woollen* v. *Wishmier,* 70 Ind. 108; *Galvin* v. *State, ex rel.,* 56 Ind. 51.

We do not think that the case of *Reid* v. *Houston,* 49 Ind. 181, supports, to the full extent, appellees' contention here. It can not be ascertained from an examination of that case, that what was there said in relation to the long-hand manuscript of the evidence upon appeal, was material to the case before the court.

This brings us to an examination of appellant's motion for a new trial. He chose his mode of trial, and that was by a special finding of the facts, and conclusions of law thereon. The question then is, not whether, upon the whole evidence, he should recover, not whether there are equities between the parties, or an estoppel of any kind as against Emma J., but whether the trial court correctly found the facts. *Robinson* v. *Snyder,* 74 Ind. 110.

In their brief, appellant's counsel concede that the evidence sustains the special finding of facts, except as to the consideration for the deed from Emma J. to Henry C., and as to the unsoundness of Emma's mind. It was found as a fact, in the special finding of facts, that Emma J. is now, and always has been, a person of unsound mind, and incapable of managing her estate; that in 1883 she was so adjudged, and a guardian of her person and estate was appointed.

The evidence abundantly sustains the special finding as to the condition of her mind. It not only shows that she was

incapable of managing her estate, but also that she was utterly incapable of comprehending and understanding the force and effect of the deed, which she signed by her mark.

As to the consideration counsel say : " The court, in its special finding of facts, wholly fails to find that there was a consideration for the deed from Emma J. Taylor," etc.

The special finding upon that question is as follows : " Henry C. paid nothing at the time of the making of said deed for said lands, but it was stated by said Catharine Taylor (mother of Emma J.), in the presence of said Emma J., that said Emma was to be maintained there as long as she lived, and said Emma and said Henry C. continued to live on said lands, using the same as before the execution of said deed ; the said Henry C. working on said farm as before, and said Emma receiving the same maintenance as before, that is, they both lived on said lands as one family, and were maintained therefrom, both before and after the making of said deed, without change as to living and maintenance."

If it be said that the finding, as made, amounts to a finding that there was no consideration for the deed, then we can not disturb the finding upon the weight of the evidence. The evidence, we think, not only tends to sustain the finding, but amply sustains it.

It is stated in the finding, that Catharine Taylor stated in the presence of her daughter, Emma J., that she was to be maintained on the farm as long as she lived. That finding was made upon the evidence of Henry C. It appears, however, that the statement was not made in his presence. He learned of that statement from Catharine Taylor, and her communication of it to him was not in the presence of Emma J. There is nothing to show that he, in any way, ever agreed or bound himself to maintain Emma J. on the farm, or to do anything else in consideration of the conveyance. It is stated in the special finding that he and Emma J. continued to live on the land, using the same as before the execution of the deed, and there is nothing to show that

Henry C. did anything in pursuance of any agreement, or as a consideration for the conveyance. See, as bearing on the case, *Ikerd* v. *Beavers*, 106 Ind. 483.

If it be said that the special finding is, in some measure, a finding of evidence, and not of facts, and that, disregarding such evidence, the special finding is so defective, uncertain and ambiguous as that it ought to be corrected, then appellant should have sought a remedy by a motion for a *venire de novo*. That he did not do.

The court did not err in refusing to allow appellant to examine Emma J. as a witness. She had been adjudged to be insane, and was under guardianship. Her condition was no better at the time of the trial. Such persons are not competent witnesses. R. S. 1881, section 497.

There was no exception to the ruling of the court in declining to have Emma J. sworn, and to examine her with a view of ascertaining her mental condition, and hence no question is presented here upon that ruling.

In no event, could such an experiment be of any avail, unless it were shown that her condition at the time of the trial was the same, or about the same, as at the time when the deed was executed. There was no offer to produce such evidence.

After the testimony in the case was closed, except a few questions to one witness, appellant requested the court to put Emma J. "in charge of three reputable physicians for the purpose of making a complete and thorough examination as to her mental condition." That the court refused. There was no error in such refusal. In the first place, the court was not bound to stop the case at that stage in its progress, for the purpose of selecting physicians and having such an examination made. Whether, if appellant had used proper diligence, and made such a request at an earlier time in the progress of the case, it ought to have been granted, is a question we need not, and do not decide. In the second place, there was no offer, or proposal, to make the result of such

an examination material, by showing that the mental condition of Emma J., at the time, was the same, or substantially the same, as at the time the deed was executed.

We have given to the several questions discussed by counsel a careful and patient examination, and are constrained to hold that there is nothing presented by the record that would justify a reversal of the judgment.

Judgment affirmed, with costs.

Filed Feb. 1, 1887.