The City of New Albany v. The Iron Substructure Company.

Filed June 12, 1895.

———————◆———————

No. 17,072.

THE CITY OF NEW ALBANY v. THE IRON SUBSTRUCTURE COMPANY.

SUPREME COURT PRACTICE.—*Sustaining Demurrer Assigned as Error.—Absence of Demurrer from Record.*—Where the sustaining of a demurrer is assigned as error, the Supreme Court must, when the demurrer is omitted from the record, disregard its absence from the transcript and presume that in form and in substance it was in compliance with the provisions of the statute.

SAME.—*Ruling on Motion.—When no Question Presented.—Record.*—Where a motion, on which the court's ruling is questioned, has not been made a part of the record by bill of exceptions or order of court, no question is presented for decision thereon.

SAME.—*Rejected Evidence.—Relevancy.—Record.*—Where it appears that excluded evidence depends for its pertinency upon other evidence which must have been introduced, but which is not in the record, the Supreme Court will presume that the trial court excluded

The City of New Albany *v.* The Iron Substructure Company.

the evidence for the reason that none was given that rendered that which was offered and rejected admissible.

HARMLESS ERROR.—*Sustaining Demurrer to Paragraph of Answer.*— *Practice.*—The sustaining of a demurrer to a paragraph of answer, if error, is harmless where the same defense was admissible under another paragraph which remained a part of the answer.

BILL OF EXCEPTIONS.—*Evidence.*—*Attempt to Incorporate by "Here Insert."*—*Master Commissioner.*—Where an attempt was made to incorporate a commissioner's report of the evidence into the bill of exceptions by a direction to "here insert," the evidence is not properly in the record. The evidence must be inserted in the bill before the same is signed by the judge. McCABE, J., dissents.

SAME.—*Evidence.*—*Report of Master Commissioner, How Made Part of Record.*—The report of the evidence by a master commissioner must be made a part of the record on appeal by bill of exceptions or order of court.

BRIDGES.—*In Towns and Cities.*—*Who May Build.*—*Act of 1885.*— *Statute Construed.*—While the act of 1885 imposes the duty of constructing bridges in towns and cities in certain cases upon the board of commissioners, still this act does not withdraw all power from towns and cities to build bridges, in such cases, when they deem it proper to do so.

SAME.—*City.*—*Contract Ultra Vires.*—*Defense.*—*Estoppel.*—Where a city, without taking any steps to have the county commissioners to build a bridge, procured a bridge to be built, and the contractor entered into the contract and constructed the bridge in good faith, the city can not set up in defense of the payment of the price therefor, that its action in executing the contract and procuring the construction of the bridge was *ultra vires*.

From the Floyd Circuit Court.

*H. E. Jewett, W. W. Tuley* and *G. H. Hester,* for appellant.
*J. V. Kelso* and *C. D. Kelso,* for appellee.

JORDAN, J.—Action by appellee against appellant to recover the contract price of a bridge constructed by the former over a certain stream, on one of the public streets within the city of New Albany, a municipal corporation organized under the laws of this State. Upon the trial a judgment was rendered in favor of appellee for the sum of four thousand one hundred and $\frac{63}{100}$ dollars. From this judgment this appeal is prosecuted.

The City of New Albany *v.* The Iron Substructure Company.

Ten errors are assigned:

First. That the complaint does not state facts sufficient.

Second. Overruling demurrer to complaint.

As the objections, if any, to the pleading assailed, can be more effectually presented by the second assignment than by the first, the latter will not be considered. The sufficiency of the complaint is called in question only upon the ground that it is based upon a written contract, and that neither the original nor a copy thereof is filed therewith. Since the filing of appellant's brief, however, upon a *certiorari* awarded by this court, this omission in the record has been supplied, and the objection is now no longer available. The third, fourth, fifth and sixth assignments are not discussed by appellant, and therefore are waived. The next error presented and discussed is the seventh: "That the court erred in sustaining the demurrer to the seventh paragraph of defendant's answer." Appellee's learned counsel contend that by reason of the fact that this demurrer is omitted from the record, this court ought not to consider this assignment. However, as the trial court sustained the demurrer, we must disregard its absence from the transcript, and presume that in form and in stating the prescribed grounds that it was in compliance with the provisions of the statute in relation thereto. Had the assignment been upon overruling the demurrer, its omission would have presented a different question. Upon examination, we find that the original answer contains but five paragraphs. Upon an extended search through the voluminous record (unaided by counsel for appellant by citation in his brief, as to page and line) we find in the proceedings of the case, at a subsequent term of the court, that two additional paragraphs of answer, numbered six and seven, were filed. We may

The City of New Albany *v*. The Iron Substructure Company.

here suggest that a more proper and specific assignment would have been to have stated that the court erred in sustaining the demurrer to the seventh additional paragraph of answer. However, waiving this questionable assignment of error in this respect, we have examined this seventh paragraph, and find that it substantially contains the same facts set up in the sixth, to which the demurrer was overruled, hence it follows that the ruling of the court in sustaining the demurrer to the former is upon any view of the question harmless to appellant, as it could avail itself of the same defense by reason of its sixth paragraph which remained as part of its answer.

By the eighth assignment, appellant seeks to controvert the action of the court in submitting the evidence taken before a former master commissioner to another master subsequently appointed. This action of the trial court we can not review, for the reason that the motion, and the grounds therein stated upon which this ruling was based, are not made a part of the record by a bill of exceptions or order of court. Elliott App. Proced., sections 190, 191, 814, and cases there cited.

The next error of which appellant complains is the ninth: "Overruling the motion for a new trial." The first ground stated in this motion is the one embraced in the eighth assignment of error, and if it could be conceded that it was correctly assigned as a cause for a new trial it must, in any event, be dismissed from further consideration for the reason herein stated, that the motion upon which the ruling of the court arose is not in the record.

By the second reason assigned for a new trial, appellant endeavors to call in question the decision of the court in not permitting certain witnesses offered by it to testify at the trial. It appears from the record that by the agreement of parties a master commissioner was ap-

pointed by the court to take and report the evidence; this duty was discharged by the master and he reported the same to the court, which report was filed. The evidence set forth in this report was used by the parties on the trial of the cause, and is that upon which the court made its finding and rendered judgment. .This evidence is, however, not brought into the record by a proper bill of exceptions. An attempt seems to have been made to incorporate this report, and the evidence therein set out, by a direction to "Here Insert." It could not be embodied in the bill in this manner. It must be inserted in the bill before the same is signed by the judge. See *Patterson* v. *Churchman*, 122 Ind. 379; *Ohio, etc., R. W. Co.* v. *Voight, Admr.*, 122 Ind. 288; *Wagoner* v. *Wilson*, 108 Ind. 210; *Barnes* v. *Turner*, 129 Ind. 110; *Pennsylvania Co.* v. *Brush, Admx.*, 130 Ind. 347; *McCoy* v. *Able*, 131 Ind. 417.

Where the master is merely to report the evidence to the court his report must be made a part of the record on appeal by a bill of exceptions or order of court. *King* v. *Marsh*, 37 Ind. 389; *Stanton* v. *State, ex rel.*, 82 Ind. 463; *Lee* v. *State, ex rel.*, 88 Ind. 256; *McNaught* v. *McAllister*, 93 Ind. 114.

For the reason stated, we must hold that the evidence is not in the record.

It clearly appears, in the case at bar, that the evidence excluded by the court depends for its pertinency upon other evidence that must have been introduced upon the trial, and as none of this is contained in the record, it is not made to affirmatively appear that there was any error in rejecting the offered testimony, and we must presume that the court below excluded the evidence, for the reason that none was given that rendered that which was offered and rejected admissible.

*Conden* v. *Morningstar*, 94 Ind. 150, and cases cited; Elliott's App. Proced., section 721.

It follows, therefore, that the questions sought to be raised by appellant in this court upon the alleged error in overruling the motion for a new trial must be dismissed without consideration upon their merits.

Under the tenth error appellant assails the conclusions of law stated by the court upon its special finding of facts, for the sole reason, as contended, that the appellant's common council had no power to procure the bridge in question to be constructed, for the reason that this power was vested in the board of commissioners of Floyd county, wherein said city is situated, by virtue of an act of the General Assembly, approved March 7, 1885. Elliott's Supp., section 1521, R. S. 1894, section 3283.

This section provides that all bridges, the estimated cost of which shall exceed $500, to be built within the limits of any town or city, shall be constructed by the board of commissioners, etc. The court, *inter alia*, in its special finding, found that the common council of the city of New Albany, by express authority, of two-thirds of all the members constituting said council, entered into and executed the contract with appellee for the construction of the bridge in controversy, on lower Seventh street of said city over Falling Run creek, at a point where said stream passes through and crosses that street; that appellee built the bridge in accordance with said contract and fully performed its part of the same; that at the time appellant entered into said contract a culvert bridge, or stone arch, which had been formerly erected by appellant over said creek at the place where the bridge was built by appellee, had caved in and left the street in a bad and dangerous condition, and it had become necessary to construct another bridge in place of this arch

in order to make the street passable and safe for the public.

Section 3161, R. S. 1881, as amended (see section 3623, R. S. 1894), grants to cities full power and authority over the streets and bridges and the construction of the latter. Therefore, under the facts, as found in this case, the contention of appellant that by reason of the act of 1885, *supra,* its common council had been deprived of its power to procure the building of this bridge, the cost of which was over $500, and that its act in so doing was *ultra vires,* and hence it is not liable in this action, has no support under the law, and can not be sustained.

While the act of 1885 in question imposes the duty of the construction of bridges in towns and cities in certain cases upon the board of commissioners, still it can not be held that this act was intended to and does withdraw all power from these municipalities to build bridges when they deem it proper to do so, especially under the facts and circumstances as they existed in the case at bar. See *City of Wabash* v. *Carver,* 129 Ind. 552.

We do not think that it was the intention of the Legislature, by the enactment of the statute of 1885, to deny the right to cities or towns to construct bridges like the one in question, provided these corporations see fit and proper to claim and exercise the power to construct the same at their own expense.

Section 1521, Elliott's Supp., and section 3283, R. S. 1894, and section 3623, *supra,* must be construed together, and so construed as to produce consistency and harmony. See *Lutz* v. *City of Crawfordsville,* 109 Ind. 466.

While the rule that a municipal corporation can not make a binding contract, if the same is wholly beyond the express or implied powers with which it is invested, is well established; however, it can not be held that

the statute of 1885, *supra,* by imposing the duty therein mentioned in regard to certain bridges upon the board of commissioners, wholly destroyed and rendered nuga-tory the power relating to the construction of bridges, with which appellant was vested by section 3623, *supra.* With this view of the case, the rule or principle of law above stated can not aid appellant to relieve itself from liability upon its contract.

Without taking any steps to have the board of com-missioners discharge the duty imposed upon it by this statute, appellant saw fit and proper to claim and exer-cise the right or power to procure the bridge in contro-versy to be built by appellee, and the latter in good faith having entered into the contract, spent its time and money in the construction thereof, it can not now be heard to urge in defense of the payment of the price therefor that its action in executing the contract and pro-curing the bridge to be built was beyond the scope of its power, when it appears that the contract into which it entered was neither prohibited by law nor unauthorized. See Beach Pub. Corp., sections 223, 224, 225, 226, 227.

The question raised and discussed by appellee as to the statute of 1885 being unconstitutional under the con-clusion which we have reached, need not be considered.

Finding no available error in the proceedings, the judgment is affirmed at the cost of appellant.

Filed March 14, 1895; petition for a rehearing overruled June 4, 1895.

## DISSENTING OPINION.

McCABE, C. J.—I concur in the opinion of the major-ity on all points except one, and that is that the evidence is not in the record. I am of opinion that it is for the following reasons: I concede that the previous decis-ions of this court warrant the conclusion that the origi-nal longhand manuscript of the evidence and its in-

cidents, if not actually embodied in the bill of exceptions when it is signed, but is ordered to be inserted by a direction to the clerk to (here insert), in brackets, and is afterwards so inserted or set into the bill of exceptions by the clerk in making up the transcript, that it is not properly in the record; but I think those decisions are so clearly wrong that they ought not to be followed any longer.

In *Ohio, etc., R. W. Co.* v. *Voight, Admr.*, 122 Ind. 288, cited in the prevailing opinion, this court said: "At common law a bill [of exceptions] was required to be perfect in all its parts before the attestation. * * If a dispute were to arise in this cause as to whether what purports to be the longhand manuscript of the evidence, found with the papers, is the manuscript referred to in the bill of exceptions, we would not be able to settle that dispute by the record before us."

In *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31, this court said: "Contrary to the rule which prevailed prior to the enactment of the code, it is now competent to incorporate a paper or document into a bill of exceptions without copying it into the bill. This may be done by so describing or designating it as that the clerk may know to a certainty the particular paper or document intended to be inserted, and by designating by the words (here insert) the place where it is to be copied by the clerk in making the transcript." Citing *Kesler* v. *Myers*, 41 Ind. 543; *State, ex rel.*, v. *President, etc.*, 44 Ind. 350; *Irwin* v. *Smith*, 72 Ind. 482. To the same effect is *Stevens* v. *Stevens*, 127 Ind. 560.

In *Atchison, etc., R. R. Co.* v. *Wagner*, 19 Kan. 335, Brewer, J., speaking for the court, says: "When the bill receives the signature of the judge it should be complete, and this we understand to be the substance * of all the decisions. There is to be no further discussion, no

The City of New Albany *v.* The Iron Substructure Company.

further discretion; the record is made. * * It is * a part of the record, but the record must speak for itself. It must show on its face all that it is. It must be its own evidence of all that it contains. No part of its contents may rest upon the discretion of the clerk, the recollection of the judge, or the testimony of counsel. * * Where a deposition or other writing is to be made a part of a bill it can be referred to with such marks of identification as to exclude all doubt. * * * We appropriate the language of the Supreme Court of the United States in the case of *Leftwitch* v. *Lecann*, 4 Wall. 187, in which the court says: 'If a paper which is to constitute a part of a bill of exceptions is not incorporated into the body of the bill, it must be annexed to it, or so marked by letter, number or other means of identification mentioned in the bill as to leave no doubt, when found in the record, that it is the one referred to in the bill of exceptions.' And this means of identification must be obvious to all. No mere memorandum, intelligible as it may be to a single person, even the clerk, but indicating nothing to any one else, will be sufficient. They must be such that any one going to the record can determine what document is to be inserted, or, after insertion, that the clerk has made no mistake. The record must prove itself, and not the record *and* the testimony of the clerk. The clerk changes; the record endures. And long after judge and clerk are both gone, the record, if good, must carry on itself the evidence of its own integrity.''

It was held by this court in *Hull* v. *Louth*, 109 Ind. 315, that it was the proper practice prescribed by section 1410, R. S. 1881, for the clerk in making up the transcript to take from the bill of exceptions the longhand manuscript and put it into the transcript of the record without being copied, and that the balance of the bill of exceptions must be copied. That was in 1886. That

remained the settled law and practice until the 19th day May, 1892, when *McCoy* v. *Able*, 131 Ind. 417, was decided by this court, wherein this court partially overruled *Hull* v. *Louth, supra,* to the extent of authorizing in any case where a bill of exceptions embracing nothing else but the longhand manuscript and its incidents to be set into the transcript without being transcribed thereinto. So that as the law now stands in all cases where other matters are to go into the bill, as was the case here, the manuscript must be torn apart from the bill by the clerk and set into the transcript, and all other parts of the bill must be copied into the transcript, and the original of those parts of the bill must remain on file in the court below. That practice was the one followed in this case by the clerk, and correctly, too, if the decisions above referred to are to stand. Therefore, to send here the original bill that yet remains in the clerk's office below would afford no greater or better information to this court as to the connection the several papers composing the supposed bill had to each other than is afforded by copies of them which the clerk has returned. Those copies, with the clerk's accompanying statement, impart all the information to this court that it could have acquired had it been able to look into the clerk's office below.

All this trouble about this bill of exceptions is the legitimate outgrowth of what seems to the writer a misconception by this court of the true intent and meaning of section 1410, R. S. 1881, authorizing the incorporation of the original longhand manuscript of the oral evidence and its incidents into a bill of exceptions. That misconception began in *Wagoner* v. *Wilson,* 108 Ind. 210.

It has been followed ever since down to *McCoy* v. *Able, supra,* and perhaps later cases. Under that practice, inasmuch as the bill of exceptions is to be mutilated and

torn apart by the clerk as soon as he comes to make up the transcript and parts of it after separation are to be left remaining on file in the clerk's office and another part to be set into the transcript and sent up here, how natural it would be for the attorney to conclude that it is useless for him to do to-day what the clerk is required by law to undo to-morrow or next week when he comes to make up the transcript, to leave that thing undone, and instead of a completed and perfect bill of exceptions to leave a bundle of separate pieces of paper in the clerk's office for a bill of exceptions, and thus create a deal of confusion that now prevails under that practice.

It is a familiar principle in the construction of a statute to look to other statutes upon the same subject and to existing law upon that subject.

In the case last cited after citing section 626, R. S. 1881, this court said: "This section provides that in making up a bill of exceptions, it shall not be necessary to copy a 'written instrument or any documentary evidence' into the bill, but it shall be sufficient to refer to such evidence, if its appropriate place be designated by the words 'here insert.'

"A somewhat liberal construction has apparently been given to the phrase 'written instrument or any documentary evidence' as used in this section, but we should hesitate to affirm that these words would embrace the official reporter's original longhand manuscript of the oral evidence taken in a cause. However this may be, the provision referred to in section 626, * relates to such instruments and evidence as are thereafter to be transcribed by the clerk in making the transcript, and not to the reporter's longhand manuscript when that is to be certified up under section 1410. The paper or documentary evidence which may be inserted by the clerk, at the place designated, when the bill is copied into the tran-

script by him, must be so identified and described in the bill, as that the clerk may know to a certainty the particular instrument or document which he is to transcribe and insert at the point indicated. This of course, has no application to a case where the original manuscript itself is to be incorporated into a bill and certified to this court. In such a case there is nothing for the clerk to transcribe or insert." The error here is in ascribing to the word "insert" the same meaning, and no broader meaning, than the word "transcribe." The section of the statute referred to does not use the word "transcribe," but uses the word "insert" alone. And Webster defines the word as follows : "To set within something; to put or thrust in; to introduce; to cause to enter, or be included or contained; as to insert a scion in a stock; to insert a letter, word or passage in a composition; to insert an advertisement in a newspaper."

That is all of the definition of the word "insert" given in Webster's Unabridged Dictionary. So that while the word may mean to write in or transcribe, its meaning is clearly broad enough to authorize the official reporter's original longhand manuscript of the oral evidence and its incidents to be set into the transcript by the clerk, if its appropriate place be designated by the words "here insert," and if it be on file in the clerk's office and be properly and clearly identified by the bill, so that the clerk may know to a certainty that it is the document referred to.

This court, in *Patterson* v. *Churchman*, 122 Ind. 379, cited in the prevailing opinion, speaking of said section 626, said: "The statute referred to above is an innovation upon the common law, and as it is not a remedial statute, must have a strict construction," and then went into a definition of the phrases "written instrument" and "documentary evidence," concluding that the of-

The City of New Albany *v.* The Iron Substructure Company.

ficial reporter's original longhand manuscript was comprehended within neither phrase.

While it is true that that section, as well as section 1410, is an innovation upon the common law, I am constrained to believe that this court erred in holding that either one of the sections was not remedial, and therefore to be construed strictly. It is only statutes that are not remedial that innovate upon the common law, that must be strictly construed. Sutherland Stat. Con., section 401.

The same author, at section 207, says: "Remedial statutes are such as the name implies, embracing a great variety in detail; those enacted to afford a remedy or to improve and facilitate remedies existing for the enforcement of rights and the redress of injuries; and also those intended for the correction of defects, mistakes and omissions in the civil institutions and administrative polity of the State."

It is apparent to all that both sections are remedial, according to this definition.

The author, in the same section, then goes on to say what this court has frequently adjudged, "that remedial statutes are to be liberally, beneficially and largely construed to suppress the evil and advance the remedy." *Tousey* v. *Bell,* 23 Ind. 423; *Marion, Tp., etc., Co.* v. *Norris,* 37 Ind. 424.

The obvious purpose of both of these sections was to lessen the burdens of the due administration of justice, making the same plainer, easier and at the same time preserving all the certainty, as to the contents of the record, that existed before, and enabling parties to preserve and put into the record a more exactly correct memorial of everything that took place on the trial than ever before, and with much less cost and labor.

Now what was the construction this court had placed on the phrase "written instrument" in section 626 when section 1410 was enacted? It is true this court had decided that a judgment was not a "written instrument" within the meaning of another section of the code where that phrase occurs, and that such phrase in that section embraced and meant such instruments as deeds, mortgages, bonds, written contracts, promissory notes, bills of exchange, etc. That section had reference to such instruments as were made the foundation of a suit. But the question is, how had the court construed the phrase in this section? The undeniable answer is that this court had construed that phrase in this section to embrace and authorize the incorporation into a bill of exceptions by a "here insert" every writing of every description which might become necessary to be incorporated in a bill of exceptions, whether it be a written instrument within the restricted sense or otherwise. For instance, it is well known to the bench and bar throughout the State, that if a complaint, answer or reply, or all of them, be stricken out in the trial court on motion, no question could be raised in this court as to the propriety of that action unless such papers are brought into the record by being incorporated in a bill.

It is believed that no lawyer or judge in the State ever doubted that such complaints, answers and replies could be and were incorporated in bills of exceptions by a direction to "here insert" and without being written out in full in the bill before being signed. And yet no one, I presume, will contend that such papers are "written instruments" within the restricted sense applied to that phrase in section 362, R. S. 1881, which is section 782, R. S. 1852. The same is true of motions, affidavits, offers to confess judgment, interrogatories propounded to a party and answers thereto, suppressed depositions, in-

structions to the jury, and many other papers and writings were constantly being incorporated in bills of exceptions under the provisions of section 626, by a direction to "here insert" when section 1410 was enacted and the propriety and correctness of that practice was never questioned, either before or after the enactment of section 1410. In short, it is quite safe to say that prior to the enactment of section 1410 there was no writing that became necessary to be incorporated in a bill of exceptions that the practical construction given to section 626 did not permit to be incorporated in a bill by a direction to "here insert." And yet no one would think for a moment of calling the papers just named written instruments within the restricted sense contemplated in section 362, R. S. 1881.

This court has adjudged that a practical construction given to a statute by long continued action and acquiescence therein is equal to positive law. *Board, etc.,* v. *Bunting,* 111 Ind. 143.

The very first definition of the phrase "written instrument" given by BERKSHIRE, J., delivering the opinion on petition for rehearing in *Patterson* v. *Churchman,* *supra,* from Anderson's Dictionary of Law is as follows: "3. Anything reduced to writing." And that would comprehend and embrace all writings necessary to be incorporated in a bill of exceptions.

I am utterly unable to bring my mind to the belief that the Legislature, in enacting section 1410, intended to authorize and require so uncivilized a practice as the disemboweling a record after it is made, the commission of vandalism upon a bill of exceptions which it first requires to be complete, thus destroying the means of knowing what the record was before it comes to this court.

I, therefore, feel unable to avoid the conclusion that

the Legislature had no idea in enacting section 1410, that the official reporter's longhand manuscript of the oral evidence and its incidents was a writing so far different from other writings that it might not and ought not to be incorporated in a bill of exceptions precisely in the same manner as other writings were then being incorporated by the prevailing practice. And that prevailing practical construction of section 626 so as to make the phrase "written instrument" include all writings which became necessary to be incorporated in a bill of exceptions was justified by the decisions of this court both before and after the enactment of section 1410.

In *City of Evansville* v. *Summers*, 108 Ind. 189, quoting from a case in 8 Indiana, this court said: "It is a settled rule of interpretation of statutes that the application of a single statute may be enlarged or restrained to bring the operation of the act within the intention of the Legislature when violence will not be done by such interpretation of the statute." See, also, *Storms* v. *Stevens*, 104 Ind. 46; *Ledgerwood* v. *State*, 134 Ind. 81.

We have already seen that the meaning of the word "insert" is wide enough to justify placing the longhand manuscript into a bill by a direction to "here insert;" indeed we have seen the primary signification of the word "insert" is "to set within something." And the code requires that "words and phrases shall be taken in their plain or ordinary and usual sense." R. S. 1881, section 240.

Therefore, it seems to me it was an error in *Wagoner* v. *Wilson, supra,* to hold in effect that the word "insert" meant to "transcribe," and hence the original being required to be put into the bill, the longhand manuscript could not be put in under a direction to "here insert."

The other construction, while it seems to me would be the more natural and correct one, would simplify the ad-

ministration of justice in this respect very greatly, eliminate all confusion, and leave on file in the clerk's office below an unmutilated bill of exceptions, whereby all disputes could be settled concerning the condition of the whole bill before the transcript was made out. Such a construction would be in harmony with the spirit of the code. I am not unmindful of the familiar principle often declared by this court, that it is more important that many questions of mere practice be settled than *how* they are settled.

But this is a question of practice that is nearly as important that it be settled right as that it be settled at all. Though it has been settled, it did not remain settled, and the way it has been attempted to be settled has given rise to a vast number of controversies in this court over that question, and still they come. Settled the other way, it is believed that a vast amount of the time of this court spent in looking into and settling these controversies could and would be devoted to the consideration of the merits of the respective claims of litigants in this court, instead of being devoted to these mere technical controversies about practice. Therefore, the writer is in favor of overruling *Wagoner* v. *Wilson, supra,* on this point and the subsequent cases that have followed it, and in that event the evidence in this case would be properly in the record.

Filed March 14, 1895.