O'NEILL, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*February 25—March 22, 1904.*

*Municipal corporations: Public works: Contracts: Mistake of city engineer: Recovery by contractor for resulting damage: Waiver.*

1. Plaintiff contracted with defendant city to construct a water-works crib and place it in Lake Michigan at a specified point, to be located by the city engineer. The work was to be done under the superintendence and to the satisfaction of the board of public works, and the city engineer (who was president of said board) was to do all the requisite surveying. The place for the crib was designated by the engineer accordingly, and plaintiff prepared the lake bottom for it, but the spot was not marked by fixed monuments. When the crib was ready to be sunk, plaintiff notified the engineer, who thereupon attempted to relocate the place previously agreed upon, and took charge of the work of sinking and placing the crib, the other members of the board being present sanctioning the execution of the work. By mistake of the engineer the crib was sunk about fifteen feet from the spot which had been designated and prepared for it, thereby causing it to lean over and rest insecurely and to be damaged by a storm occurring soon after. *Held*, that under the contract as practically construed by the parties it was the duty of the engineer to relocate the spot which had been designated for the crib, and that the city was responsible for the damage resulting from his mistake.

2. The board of public works, after being informed of the facts and notified by plaintiff that he would look to the city to make good to him the damages, insisted that plaintiff complete his contract, and he did so by moving the crib to the proper place and repairing the damage caused by the mislocation, under protest of any waiver of his claim for the extra expense. *Held*, that he did not thereby waive such claim.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

Plaintiff brings this action to recover damages for an alleged breach of contract. Plaintiff and defendant city of *Milwaukee* entered into a contract on June 30, 1890, whereby plaintiff agreed and undertook the construction and plac-

ing of a crib in Lake Michigan, forming part of a new intake in connection with the waterworks system of the city. The plans for such improvement required the construction of a tunnel running from near the shore, beneath the bottom of Lake Michigan, a distance of about 3,100 feet, at which point it was planned to connect with a crib which was to be placed at the bottom of the lake, connected with the tunnel and with pipes which were to be extended to a considerable distance into the lake. Plaintiff's contract was for the construction and the placing of the crib. He undertook to construct the crib according to the plans and specifications, and to place it as required by the contract and the plans and specifications. The crib was a twelve-sided polygon, fifty-six feet in diameter, and inside was a well with a diameter of twenty feet and a depth of twenty-nine feet, with the bulkhead around the well divided into six watertight compartments. The exterior and the interior walls running to the center well, and other work, were to be built of twelve by twelve inch timbers bolted together. Through the center of the floor of the crib extended a steel tube eleven feet in diameter and seven feet long, the upper end flush with the floor and the lower end projecting two feet below the bottom timbers. The crib to be watertight in all compartments, which were to be filled with concrete after the crib was located. Plaintiff's contract required him to sink the crib at a place to be designated by the city engineer.

The charter of the defendant city, in prescribing the duties of the city engineer, provides: "It shall be his special duty to superintend and to do or cause to be done all the civil engineering required by the board of public works in the management and prosecution of all public improvements committed to their charge, and all such other surveying as may be directed by said board or by the common council," and that said engineer shall be *ex officio* a member of the board of public works, and president thereof. The charter further

provides that it shall be the duty of the board of public works
to take charge and superintendence, subject to the ordinances
of the city, of the maintenance of streets, alleys, bridges, and
all other public grounds, buildings, and improvements, and
all work pertaining thereto, and that:

"They shall have power to make contracts in the name and
behalf of the city for the purposes and in the manner and
under the limitations prescribed. . . . They shall per-
form all the duties prescribed by [the charter], and such
other duties as the common council may from time to time
require."

All contracts for and in behalf of the defendant city shall
be awarded to the lowest bidder, under the terms and condi-
tions of the charter, and they must be executed to the satis-
faction of the board of public works under the superintend-
ence of the board.   The specifications for the work covered
by the contract in this case contained these provisions:

"All the work during its progress and on its completion
shall conform exactly to the lines and grades shown on the
drawings mentioned in these specifications and given by the
engineer in charge, subject to such modifications as the board
of public works may deem necessary during its execution."
"All work contemplated and described in these specifications
shall be done to the satisfaction of the board of public works
and city engineer."   "The engineer will do all the requisite
surveying for the work so as to cause as little inconvenience
as possible, but the contractor will have no claim on account
of delay or stoppage of the work necessitated by such survey-
ing, and shall furnish assistance to facilitate giving lines and
grades."

It was further agreed that plaintiff would execute and per-
form said work under the superintendence of the board of
public works.   He was required by the contract to prepare
the lake bottom at the place designated to receive the crib,
by dredging the bottom to a smooth, level bed, and to sink the
crib in the place so prepared.   The specifications provided
that the crib should be "settled in place at a point 3,140 feet

due east from the shore shaft," to be located by the engineer, and that the parties to the contract might, by agreement, select a point in that direction, and at approximately that distance from the shaft. This point for locating the crib was changed by agreement before the plaintiff started dredging, for the reason that there were boulders in the northern portion necessary for the placing of the crib, and the point was therefore shifted thirty feet to the south. Plaintiff dredged the area so last above designated, and on December 24, 1890, notified the city engineer that he was ready to set the crib. The city engineer then marked the point by means of triangulation, and directed plaintiff to sink the crib at the point so located. Plaintiff alleges that he sunk and placed the crib as directed. It was subsequently discovered that it had been placed at a point about fifteen feet from the place agreed upon and prepared. Plaintiff charges that such misplacing was due to the carelessness of the city engineer, and caused him damages as alleged in his complaint.

This action is brought charging breach of the contract in the respect above mentioned, and claiming damages as the result of such breach by injuring the crib and causing expenditures for replacing it. The issue was referred to Hugh Ryan, as referee, on April 15, 1897, to hear, try, and determine. He made his report on December 15, 1902. The material findings were substantially as follows:

After the execution and delivery of the contract, performance thereof was from time to time duly extended until August 1, 1891. The point designated in the specifications for the location of the crib was not inserted for the purpose of definitely fixing the location, but for the purpose of ascertaining the length and direction of the tunnel as part of the waterworks intake system. At the time of the contract the point at which the crib was required to be located and sunk had not been determined, nor was it designated by any monument or object. After the making of the contract, and be-

fore plaintiff was ready to place the crib, the city engineer made, or caused measurements to be made, to ascertain and designate the point at which the crib was to be located and sunk, and marked the same by placing three buoys in a line to designate the center line of the location of the crib. Boulders at the point selected necessitated a change, and it was agreed by plaintiff and defendant that the location should be changed a few feet to the south. Thereupon plaintiff caused this area to be dredged so as to make a smooth, level place for the crib with a proper excavation at the center, about two feet in depth, for the purpose of admitting a steel tube forming part of the crib.

In dredging the lake bed the buoys were necessarily displaced, and one of them was carried away by the action of the elements. Plaintiff notified the board, but the buoys were never reset by the city engineer. On December 24, 1890, the crib was ready for sinking, and plaintiff notified the city engineer that he was ready, and had provided a sufficient number of men, tugboats, tackle, and other appliances for sinking and placing it. The city engineer, under the direction of the board of public works, with the aid of his assistants, undertook to find the point last designated and agreed upon for the location of the crib, and then and there took full charge of the work of sinking it, and caused it to be sunk at a place designated by him.

The referee specifically found:

"That said crib was not sunk on said 24th day of December, 1890, at the place which had theretofore been designated by said engineer and agreed upon . . . as the place where the same was to be sunk, and where the bed of the lake had been dredged and prepared, . . . but was sunk about fifteen feet south of said location; . . . that as said crib was sunk the north edge thereof projected over the depression in the center of the prepared ground, and was unsupported, while the south edge thereof rested upon a bank or shoulder of ground at the edge of the place which had been

dredged as the location for said crib." "That the mislocation of said crib and the sinking thereof at the place other
than that prepared for it was wholly due to the mistake of
the city engineer and his assistants, acting under his direction and control, in failing to ascertain and point out the
spot which had theretofore been designated by said city engineer and agreed upon between the plaintiff and defendant
as the place at which the said crib should be located and
sunk." "That while the employees of the plaintiff were
loading said crib with stone on the night of December 24,
1890, it was discovered that said crib listed, or leaned to the
north. That thereupon, on the 25th or 26th day of December, 1890, the plaintiff notified the city engineer and board
of public works of the defendant of the fact that said crib
leaned or listed as aforesaid, and was instructed by said engineer and board of public works to proceed with the loading
of said crib, notwithstanding said listing or leaning. That
said crib when fully loaded leaned or listed so that the south
side was about eighteen inches higher than the north side.
That said leaning or listing was due to the fact that the north
edge of said crib was unsupported, while the south edge
rested upon a bank or shoulder of earth at the margin of the
dredged space." "That on the night of December 31, 1890,
a violent storm occurred, by which the said crib was greatly
wrenched and injured, the cover being torn off, and the perpendicular joints at the angles, especially those on the northerly side, opened and spread apart. That the injury and
damage to said crib by said storm was wholly due to the insecure and partially unsupported position in which said crib
rested, by reason of such mistake of the city engineer and
board of public works of said defendant, and not attributable
to any negligence or lack of skill of plaintiff."

Plaintiff temporarily repaired the injury done by the
storm. The board of public works at various times notified
plaintiff to proceed to the completion of the crib, and on
March 9, April 9, and May 19, 1891, gave him written notice to move the crib to its proper position, and to repair the
same. Plaintiff protested, and claimed that the misplacement and consequent injuries were due to the mistake of the

city engineer. Before making repairs he served a notice on
the defendant that he would hold the city liable for the dam-
ages caused him. In making the repairs he used large quan-
tities of materials and appliances and employed a large
number of men, and for these items expended the sum of
$6,015.32. It was also necessary to purchase special ma-
chinery, which was sold for but a small part of its cost. When
plaintiff offered the crib for acceptance, defendant claimed
that it was defective, and put him to an expense of $2,144.94
in making an examination. For this work he rented a pump,
engine, boiler, and fittings. The rental amounted to $1,410.
Plaintiff spent in the superintendence of the repairs 107
days, and sixty-seven days in testing the crib for the alleged
defect, and was allowed $10 per day for such superin-
tendence. The total allowance to plaintiff by the referee
amounted to $11,222.47. The referee further found that
plaintiff had complied with all the provisions of the contract
on his part.

The findings of the referee were approved by the court,
and judgment was awarded in accordance therewith. This
is an appeal from that judgment.

*Carl Runge,* city attorney, and *Thos. H. Dorr,* of counsel,
for the appellant.

For the respondent there was a brief by *Quarles, Spence
& Quarles,* attorneys, and *George Lines,* of counsel, and oral
argument by *Mr. Lines.* They argued, among other things,
that the city is liable for the mistake in the location of the
crib, by which the cost to plaintiff of completing the work
was increased. The board of public works is an executive
department of the city government, and in the carrying out
of public improvements is *pro hac vice* the city itself. Mil-
waukee City Charter, ch. 5, sec. 1; *Koch v. Milwaukee,* 89
Wis. 220. As to its ministerial duties in relation to work
done under contract for the city, *i. e.,* its duties with respect
to the giving of practical working directions, the board is,

like an architect or engineer under a private building con-
tract, the agent of the party for whom the work is done, and
such party is responsible for damages caused by the agent's
defaults or neglects. *Bentley v. State,* 73 Wis. 416; *Laycock
v. Moon,* 97 Wis. 59; *Ashland L., S. & C. Co. v. Shores,* 105
Wis. 122; *Seymour v. Long Dock Co.* 20 N. J. Eq. 396;
*Messenger v. Buffalo,* 21 N. Y. 196; *Mulholland v. New
York,* 113 N. Y. 631, 24 Am. & Eng. Corp. Cas. 612; *Hor-
gan v. Mayor,* 160 N. Y. 516. Under a contract by which
the plaintiff undertook to construct a bridge in accordance
with certain plans and specifications and which imposed on
the townships having control of the highway the duty to
designate the location for such bridge, the contractor was
held entitled to recover the cost of additional work made
necessary by reason of an error of the townships' agent in
pointing out the location. *Wyandotte & D. R. Co. v. King
Bridge Co.* 100 Fed. 197; *Wood v. Ft. Wayne,* 119 U. S.
312; *Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108; *Becker
v. National P. Co.* 69 Hun, 55; *Nason Mfg. Co. v. Stephens,*
3 N. Y. Supp. 303, 127 N. Y. 602.

SIEBECKER, J. The defendant city of *Milwaukee* con-
tends that the referee and trial court erred in finding that
the plaintiff had in all respects complied with the provisions
of the contract. It is argued that the evidence fails to sus-
tain the finding that the required area of the lake bed had
been dredged by the plaintiff so as to make a level, smooth
place for the crib to rest on at the place designated by the
city engineer under the final agreement between the parties.
It is without dispute that the place originally designated by
the city engineer as the place where the crib was to be lo-
cated was changed by mutual consent, when plaintiff at-
tempted to dredge the required area at this place, on account
of the serious obstructions in the lake bed, and that such
change of location was to a point about thirty feet south from

the location originally designated and marked by the city engineer. The court approved the finding that plaintiff properly dredged the required area of the lake bed at the place last agreed upon. This is mainly attacked upon the ground that the foreman in charge of the dredging crew stated that this dredged area was east of the original location, instead of south of it, as agreed upon by the parties and designated by the city engineer. There is considerable evidence tending to show that at the time the change was made the location of the dredge was moved to the south to the place then designated by the city engineer. Subsequent location of the area dredged corroborates the fact that the dredging was at the place designated, and about thirty feet south of the original location for the crib. Upon this state of the proof it seems that the referee and court were justified in concluding that the foreman was in error when he testified that the dredging was east, instead of south, of the original location. The evidence as to the extent of the area dredged and as to its being a smooth, level place is clearly sufficient to sustain this finding. The facts that the crib was finally placed at this point; that when so placed it rested properly and firmly upon its base, correct as to level; and that this area presented evidences of having been dredged and excavated at its center for the projecting steel tube—would almost lead to a demonstration that a sufficient area had been dredged, leveled, and smoothed at the place last agreed upon and designated by the city engineer for the location of the crib.

The main controversy raised on this appeal pertains to the alleged mistake of the city engineer and his assistants, acting under his direction and control, in failing to ascertain and point out the correct location for placing the crib at the agreed place. It appears that plaintiff notified the city engineer at the noon hour on December 24, 1900, of his readiness to sink and place the crib; that thereupon the city engineer, by aid of his assistants, attempted to point out the

·exact point theretofore agreed upon and designated as the place of location; and that plaintiff had smoothed and leveled the designated area as required under the contract. In order to designate the place of locating the crib as agreed upon, the city engineer ordered two of his assistants to fixed points, from which the place of location could be determined by triangulation, and he went upon the crib, and directed plaintiff and his employees to sink it at the point at which it was placed by them on the 24th day of December. Aside from the evidence showing these facts, there is additional evidence tending to support the referee's findings that the board of public works, by and through the city engineer, as one of its members, took full charge and direction of setting the crib at the place of the lake bed as designated on the 24th ·day of December, and that the crib was in fact placed at the point designated by the city engineer, which was about fifteen feet south of the place theretofore fixed by agreement.

Without further specific discussion of the evidence, we find from an examination of it that the findings of the referee and the circuit court upon these points, as well as those attacked upon this appeal, concerning the questions of the crib's listing, the perfect construction and condition of the crib, the caulking of the well as required by the specifications, the injury to the crib resulting from the mistake of the engineer in failing to locate it in the place agreed upon by the parties, and the damages to plaintiff in making the necessary repair of the crib and placing it in a position to make it available for the purpose contemplated by the contract, are not against the weight of the evidence, but seem to be supported by it.

It is contended that the court erred in construing the contract in holding that it was the duty of the engineer to place and locate the crib. It is admitted that the city engineer was to do the requisite surveying for the work, and that all the work covered by the contract was to be done to the satis-

faction of the board of public works and the city engineer. The engineer had designated, conformably to the specifications, the place for the crib. This place was subsequently abandoned, and another selected by mutual agreement. This last point was not marked or designated by fixed monuments as a guide to plaintiff in completing his contract in placing and sinking the crib. It therefore devolved upon the engineer, acting for the board of public works, to ascertain and point out this place to plaintiff on December 24th. It is manifest that the parties so understood the contract from the practical construction they gave it on the day the crib was sunk and placed. Plaintiff called upon the engineer to perform this duty. He complied by taking charge of the undertaking to place the crib, and the members of the board were present, sanctioning the execution of the work. The evidence indicates that the plaintiff and the members of the board of public works understood it was the duty of the engineer to find and designate this place.

The injury to the crib, and the consequent extra expense incurred by the plaintiff to repair and place it at the agreed location conformable to the obligations imposed by the contract, were due to the default of the board of public works, representing the defendant city, in performing one of its corporate functions.

After the board of public works were fully informed of the failure in locating the crib as agreed, and were notified by plaintiff that he would look to defendant to make good to him all the damages resulting therefrom, the board insisted that plaintiff fully perform and carry out all the obligations imposed by the contract which then remained unfulfilled. The plaintiff thereafter performed his contractual obligations by placing the crib at the place agreed upon, and he repaired the injuries caused by the mislocation under protest of any waiver of his claim for extra expenses he incurred through the city's default. Under such circumstances plaint-

iff does not waive his claim for damages by proceeding to complete the contract upon demand of the defaulting party. In this situation he may perform so far as he is permitted, and recover the damages suffered from the breach. *Markey v. Milwaukee,* 76 Wis. 349, 45 N. W. 28; *McMaster v. State,* 108 N. Y. 542, 15 N. E. 417.

These considerations lead to the conclusion that the city was in default in performing its part of the contract, resulting from the mistake of the city engineer in failing to locate and sink the crib at the place agreed upon by the parties, and that such default resulted in damages to the plaintiff which he is entitled to recover in this action. *Markey v. Milwaukee, supra; Wyandotte & D. R. R. v. King Bridge Co.* 100 Fed. 197; *Horgan v. Mayor,* 160 N. Y. 516, 55 N. E. 204; *Seymour v. Long Dock Co.* 20 N. J. Eq. 396. The amount of extra expenses incurred by plaintiff in the repair of the injuries to the crib and sinking it at the agreed place, found by the referee and court, is not seriously questioned.

It is argued that the amount allowed plaintiff for his personal services is excessive and not sustained by the proof. The evidence upon the point was conflicting, and the finding must stand as not against the clear preponderance of the evidence. We find no grounds upon which any of the findings of fact can be disturbed. The judgment was properly awarded for the amount, with interest.

*By the Court.*—Judgment affirmed.