CITY OF NEWCASTLE v. DINGLE ET AL.

[No. 22,527. Filed November 28, 1916.]

1. MUNICIPAL CORPORATIONS.—Street Improvements.—Breach of Contract by City.—Liability.—Under the statutes exclusive power over streets and the improvement thereof is given to the municipality from which the authority to improve them eminates, and not from abutting property owners, who, although liable for the entire cost of the improvement, have remonstrance rights only, and the city is the principal in a contract for a street improvement in so far as concerns liability to the contractor for a breach of such contract by the city officials. p. 632.

2. MUNICIPAL CORPORATIONS.—Street Improvements.—Breach of Contract by City.—Even though abutting property owners are liable for the entire cost of a street improvement made under a contract let by the city, the city is liable in an action by the street contractor for damages for a violation of the terms of the contract making necessary extra work, as such action is for a breach of the contract and not for extra work done thereunder. p. 634.

3. MUNICIPAL CORPORATIONS.—Street Improvement.—Breach of Contract by City.—Remedies.—Where one having the contract for the improvement of a city street is improperly ordered by the city officials to remove portions of the work and reconstruct the same, he need not resort to mandamus to compel the proper officials to accept the improvement as first completed, but he may either stop work and bring action for labor, materials and prospective profits, or he may do the work over again as required and sue to recover damages incurred by reason of being wrongfully compelled to do such work a second time. p. 635.

4. MUNICIPAL CORPORATIONS.—Street Improvement.—Delay in Executing Bond and Contract.—While §8959 Burns 1908, Acts 1905 p. 406, provides that upon the acceptance of a bid for a street improvement the successful bidder shall enter into a written contract for the faithful execution of the work and shall give bond to secure the performance of such contract and to hold the city harmless

City of Newcastle v. Dingle—185 Ind. 626.

from the payment of any debt or damage done by reason of the act of such contractor, yet where upon the acceptance of his bid the contractor proceeded at once with the work under the direction of the city officials, but because of the failure of the city to prepare and present the written contract and bond for execution they were not signed until the partial completion of the improvement, although dated as of the letting of the contract, such bond was sufficient to protect the city, and, in an action by the contractor to recover for a breach of the contract occurring prior to the execution of such bond, it could not, after having accepted the work and the consequent benefits of the contract and bond, interpose any irregularity in their execution to which it was a party.   p. 636.

From Henry Circuit Court;  *Ed Jackson*, Judge.

Action by Samuel Dingle and another against the city of Newcastle. From a judgment for plaintiffs, the defendant appeals. (Transferred from the Appellate Court under §1429 Burns 1914, Acts 1893 p. 29.)  *Affirmed.*

*Barnard & Jeffrey*, for appellant.
*Forkner & Forkner*, for appellees.

Cox, J.—This appeal is from a judgment in an action in the court below for damages claimed by appellees against the city of Newcastle. The complaint alleges, in substance, that the appellees in the year 1907 contracted with appellant to build a portion of Race street in appellant city by grading and paving the same with brick, and by constructing cement sidewalks on either side thereof. That the appellees proceeded to construct the street according to the contract but that before the completion of the same or during its construction, they were delayed by the failure of the city to remove certain telegraph, telephone or other poles that were in the street, and that, by reason of the delay caused by such failure on the part of appellant, appellees were compelled to delay the work until the summer of 1908, at which time they completed the work on the street, which was accepted by the city

officials. That appellant issued bonds to the appellees for the amount of the contract price. That in the fall and winter of 1907 they were ordered by appellant to proceed with the construction of the cement sidewalks along the street at a time when the weather was too cold for the proper construction of cement walks, and that in compliance with the order received from the town board, appellees proceeded to construct a portion of the sidewalk along the street and that the same froze, and by reason of such freezing appellees were compelled to take up a portion of the walk and reconstruct the same. That appellees were compelled to borrow money for the purpose of carrying on the construction of the street, and had gathered together a large number of men and tools and implements necessary for the construction of the street and sidewalks, for which they invested a large amount of money, and that by reason of the delay caused by the failure of the town promptly and properly to remove the poles within the street, they were compelled to be without the use of these tools and implements and to pay interest on the money so borrowed. That the town board during the construction of the street condemned a portion of the sidewalk that had been constructed and required the appellees to remove the same, which they did at the order of the town board, and that at the further order of the town board they reconstructed the removed sidewalk. That the walk so condemned by the town board was walk that had been caused to crack by reason of the fact that the town board in constructing ditches and removing poles had failed to properly restore the dirt so removed, causing the ground beneath the sidewalk to give way and leaving the walk without proper support. For all of which

appellees claim to have been damaged in the sum of $2,000.

To this complaint appellant filed a demurrer which was overruled. Appellant then filed an answer in three paragraphs, the first being a general denial, the third a plea of payment and the second an answer which was in substance as follows: That the work and improvement of Race street in the town of Newcastle, Indiana, set out and described in the complaint and the contract filed with the complaint and all proceedings had in relation to such improvement were had and entered into under and by virtue of §265 of an act of the general assembly entitled "An act concerning municipal corporations," approved March 6, 1905, and all acts amendatory and supplementary thereto, and the entire cost of the improvement was assessed as special benefits to the abutting and adjacent property owners, and the town of Newcastle assumed and agreed to pay no part of the cost of the improvement. That the appellees did not give any bond to the approval of the board of trustees of the town to secure the performance of the contract set out in the complaint as provided by law, until July 7, 1908, and all acts, omissions and transactions set out and complained of by appellees had been consummated and had transpired prior to that date and the alleged causes of action sued on had all accrued prior to that date.

To this answer appellees replied in two paragraphs, the first a general denial, and the second, in substance, as follows: That in the month of July, 1907, the town of Newcastle, by proper resolution, determined to improve the street in the town, known as East Race street, by grading and paving the same with brick, and cement curb and sidewalk. That under and pursuant to the

resolution the town prepared and caused to be prepared full and complete plans and specifications for the work by its civil engineer and adopted the same, and by proper notice as required by law, advertised for bids for the construction of the work. That appellees submitted at the time required in the notice thereof, their bid in writing, proposing to construct the street, curb and sidewalk, in all respects according to the specifications and plans therefor. That thereafter the town of Newcastle duly accepted the bid made by appellees and directed the engineer to enter into a written contract with bond with the appellees for the construction of the work. That the engineer was delayed, for some cause unknown to appellees, in the preparation of the contract and bond, but that the board of trustees ordered the appellees to proceed with the work, which they did under the order and directions of the board, and pursuant to the terms of their bid and proposal and the written acceptance thereof by the town. That after the same had been partly completed, the engineer of the town prepared the contract set out in the complaint with the proper bond for the execution of the same and that they were both dated back to the date of the acceptance of the bid and signed by appellees and appellant. That the contract and bond were intended to evidence the contract for the improvement of the street, and after the execution of the same the appellees proceeded with the completion of the contract, at an expense of over $6,000. That the town stood by and witnessed the progress of the work both before and after the execution of the contract and requested and demanded the appellees to proceed with the work, and after the completion of the same they accepted the improvements and assessed the costs thereof, according to the terms of the

agreement, upon the abutting property owners, all of whom acquiesced in the same. The appellees aver that by the execution of the agreement set forth in the complaint, and by standing by and allowing the work to proceed without objection, and by accepting the work and assessing the costs therefor, the appellant ratified and confirmed all acts and liabilities under the contract and waived all questions of its legality by reason of the failure to reduce it to writing at the time entered into; and that the contract set forth in the complaint is of the same binding force as if it had been entered into, signed and executed at the time the oral agreement was entered into.

Appellant demurred to this reply, which demurrer was overruled. Following this ruling there was a trial by jury on the issues formed by general denial. The jury returned a verdict for appellees for the sum of $250 upon which the court rendered judgment for the appellees. Appellants filed a motion for a new trial setting up as causes therefor that: (1) the verdict of the jury was not sustained by the evidence; (2) the verdict of the jury was contrary to law; (3) the court committed certain errors in the trial of the said cause in giving instructions and in admitting evidence. This motion was overruled by the court. The rulings of the court on the demurrers to the complaint and reply and on the motion for a new trial are assigned as error in this court.

At the conclusion of the offer of evidence the court in its instructions to the jury directed them to disregard that portion of the complaint which claimed damages for the loss of interest paid on money borrowed to carry on the construction of the street, and for any loss occasioned by the fact that the appellees were unable to use the workmen hired and

the tools purchased at the time they were so hired and purchased.

It is the contention of appellant that it is in no case liable for the damages caused by the failure of the city to accept the work as done, and for its acts in requiring appellees to reconstruct certain portions of the walk, nor is it liable for any delay caused by neglect in preparing the streets for work. In support of this contention it relies on the statute under which the work was done and on the contract entered into by the parties. It is first insisted that the officials in ordering the removal of the walk, and its reconstruction, and in failing to

1. remove obstructions, were acting as agents of the abutting owners and not for the city. This point has in effect, been passed on by this court in the case of *City of Valparaiso* v. *Spaeth* (1905), 166 Ind. 14, 76 N. E. 514, 8 Ann. Cas. 1021, where it was said: "The entry of the order by the city council that the improvement be made had the effect of constituting the board of commissioners the agent of the city in the improvement of that part of the highway within the city limits". See, also, *State* v. *Kohnke* (1903), 109 La. 838, 33 South. 793; 1 Dillon, Mun. Corp. (5th ed.) §97; 2 Dillon, Mun. Corp. (5th ed.) §827, p. 1255. It is further to be noted that the statute under which the improvement was brought expressly required the contract to be entered into between the city and the contractor. Indeed the authority to improve the street eminates, under the wording of the statute, from the city. The property owners have remonstrance rights only. They in no way authorize the city to enter into relations with contractors on their behalf so as to bind them as to all acts done by the municipality or its agents during the progress of the improvement. Acts 1905 pp. 404-406, §8959 Burns

1908.   The capacity in which a city enters into contracts for improvements of its streets is not the same as that of purely governmental agencies such as counties and townships.   A municipal corporation exercises other functions than those granted to it or imposed upon it as an agent of the state.   It exercises some rights as a corporation as such, and in exercising these rights it is in general responsible as other corporations for injuries and damages resulting from such acts.   There is some confusion as to the capacity in which a city acts in the care of the streets.   In a few states it has been held that in the absence of special statutory duty imposed on a municipality there is no liability for failure to keep streets in repair.   *Winbigler* v. *City of Los Angeles* (1872), 45 Cal. 36; *Arkadelphia* v. *Windham* (1886), 49 Ark. 139, 4 S. W. 450, 4 Am. St. 32; *Young* v. *City Council, etc.* (1883), 20 S. C. 116, 47 Am. Rep. 827; *Detroit* v. *Blackeby* (1870), 21 Mich. 84, 4 Am. Rep. 450; *Hill* v. *City of Boston* (1877), 122 Mass. 344, 23 Am. Rep. 332.   The conclusion in these states is based on the theory that the duty to keep streets in repair is a public duty rather than that of the corporation as such.   But in the great majority of states, including our own, the opposite conclusion as to the nature of the duty is reached, and, in consequence, an opposite conclusion as to the liability of the city for failure to keep the streets in repair.   *Higert* v. *City of Greencastle* (1873), 43 Ind. 574; *Glantz* v. *City of South Bend* (1886), 106 Ind. 305, 6 N. E. 632, and cases there cited.   For a list of cases from other states to the same effect, see 30 Am. St. 385, note; 1 Dillon, Mun. Corp. (5th ed.) §165.   Moreover, by our statute the municipality is given exclusive power over the streets.   §8961 Burns 1914, Acts 1905 p. 407.   It is evident, therefore, that in improving and caring for

its streets the city, and not the abutting owners, is the principal. The duty to improve the streets is imposed on it and it in turn may tax the abutting owners for the cost of the improvement.

It is also contended that the demurrer should have been sustained for the reason that the contract and statute under which the improvement was 2. made both specifically provide that the cost of the improvement shall be paid by the abutting owners by assessment, and that therefore the corporation is not liable as alleged. This is true of those costs arising out of the improvement itself, but the position of appellees in their complaint is that appellant violated the terms of the contract and for that act it is liable to appellees in damages measured by the cost of the extra work they were compelled to perform. This position of appellees is correct. The cost of improvements is to be distinguished from the damage done to appellees by the failure of the appellant to do its duty under the contract. Appellees allege that they were compelled to replace portions of the walk because of the failure of the city to do its duty. It is therefore an action to recover for breach of the contract and not for extra compensation under the contract. For this breach of contract appellant is liable in damages. *Gearty* v. *Mayor, etc.* (1902), 171 N. Y. 61, 63 N. E. 804; *O'Neill* v. *Milwaukee* (1904), 121 Wis. 32, 98 N. W. 963; *Wren* 'v. *City of Indianapolis* (1884), 96 Ind. 206, 219; *City of Dunkirk* v. *Wallace* (1897), 19 Ind. App. 298, 49 N. E. 463; 4 McQuillin, Mun. Corp. §§1942,1943; 2 Dillon, Mun. Corp. (5th ed.) §813. We conclude, therefore, that the position of appellant in these particulars is not well taken, and the demurrer to the complaint properly overruled.

Although it was not assigned as one of the reasons

for sustaining the demurrer to the complaint, it is insisted by appellant, under the assignments of error in giving certain instructions and in its motion for a new trial, that the complaint for damages was not the proper remedy under the facts alleged, for the reason that it was the duty of appellees to bring proceedings in mandamus to compel the proper officials of appellant city to accept the walks as first completed. In Dillon on Municipal Corporations (Vol. 2) §813, page 1231, that eminent authority states the rule as follows: "A provision in the contract that work shall be done to the satisfaction of the city officials under whose direction it is to be performed, and that work not done to their satisfaction shall be made good by the contractor, does *not justify the city official in acting arbitrarily*, or improperly exercising the power conferred upon them by the contract. If these powers are exercised arbitrarily, or improperly, the *contractor has either of two remedies*. He may stop work upon receiving an order to remove a portion of his work and do it over again, and stand upon his contention that the work is properly done, and bring an action to recover for labor and materials furnished and performed, under the contract and for the loss of his prospective profits; or he may do the work over as required and sue to recover damages on the ground that he has been unlawfully compelled to do the work a second time." And in §827, page 1254, of the same work it is said: "But mandamus may not be the only remedy of the contractor against the city if it has plainly violated its duty towards the contractor by unreasonably and persistently neglecting or refusing to make and collect the assessment or to make a new assessment * * * ." In support of this declaration he cites the following authority: *Gearty v. Mayor, etc.*,

*supra; Lentilhon* v. *City of New York* (1905), 102
App. Div. 548, 92 N. Y. Supp. 897, affirmed in 185
N. Y. 549, 77 N. E. 1190; *O'Neill* v. *Milwaukee,
supra.* This seems to us to be the correct statement
of the law. It is in harmony with the law of private
corporations and persons, and we see no reason why
it should not apply with equal force to municipal
corporations with respect to acts done in their
corporate capacity. *Roehm* v. *Horst* (1899), 178
U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.

Appellant also contends that the demurrer to
appellee's reply was improperly overruled. It is
earnestly insisted that the failure to enter
4.   into a written contract and file a bond as
required by the statute (Acts 1905 p. 406,
§8959 Burns 1908), prior to the date of the acts
complained of, is a bar to a recovery, the facts set
up in the reply notwithstanding. The statute
provides: "Upon the acceptance of any such bid
the successful bidder shall enter into a written con-
tract for the faithful execution of such work and
shall give bond  *  *  *  to the approval of said
common council or board of trustees to secure the
performance of such contract and to hold such city
or town harmless from the payment of any debt or
damage by reason of the act of such contractor and
to secure the payment of all claims for labor and
material used in such improvement, which bond shall
be in lieu of any and all other bonds heretofore
provided for by any other law or laws of this
state  *  *  *  ."

It will be noted that the bond is to secure the
performance of the contract, and to save the city
harmless from the acts of the contractors. As
alleged, the contract has been performed. That
consideration is disposed of. There is no indication
that there was any harm done to the city by acts

of appellees and, if there had been, the execution of the bond and contract at a later date with date of execution recited as of the original date of the letting of the contract would furnish as adequate guaranty against wrong or injury as a bond and contract executed at the time. Moreover, after having accepted the work and consequent benefits of the contract and bond, the city cannot be heard to set up any irregularity in the execution of the contract and bond to which it was a party and, as alleged in the reply, for which it was to blame. It was its duty to either accept or reject the bid of appellees at the time, and not after it had received all the benefits for which the contract and bond provide. *Wren* v. *City of Indianapolis, supra; City of New Albany* v. *Iron Substructure Co.* (1895), 141 Ind. 500, 507, 40 N. E. 44; *Moore* v. *Mayor, etc.* (1878), 73 N. Y. 238, 29 Am. Rep. 134; *Hallock* v. *Lebanon* (1906), 215 Pa. 1, 64 Atl. 362. See, generally, 28 Cyc 674; 2 Dillon, Mun. Corp. (5th ed.) §793, and note citing cases p. 1186. McQuillin, Mun. Corp. §§1906, 1907, 1916, 1920.

It is unnecessary to enter further into the discussion of the questions raised by the alleged error in overruling the motion for a new trial since they are identical with those raised by the demurrers to the complaint and reply, except as above noted with respect to the correctness of the position of the court on the kind of relief asked for. There was no error committed by the court below as shown by the record, and the judgment is sustained.

NOTE.—Reported in 114 N. E. 221. Prevention of performance of contract, right to recover, 59 Am. St. 283. See also 28 Cyc 1058.