## ST. JOSEPH LOAN & TRUST CO. v. STUDEBAKER CORPORATION.

### Nos. 4813, 4878.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1933.

Iden S. Romig, of South Bend, Ind., and John C. Wait, of New York City, for plaintiffs-appellants.

John F. Cotter and John G. Yeagley, both of South Bend, Ind., for defendant-appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

We are first met with appellee's contention that appellants' bill of exceptions is not properly in the record. That contention is based on the assumption that the time for presenting and filing it expired on July 20, 1932, and was not enlarged, and the bill was not signed by the court until October 6, 1932. The record, however, shows that on July 20, at the request of both parties, the time was enlarged to August 20, 1932. The bill had been served and filed on July 30, but in the meantime, the case had been docketed in this court on July 20. Hence when the bill was presented to the trial court for approval, the judge declined to grant it for the reason that that court was without jurisdiction. On October 1, 1932, on appellants' motion, the cause was remanded by this court to the District Court, and time to settle and certify the bill of exceptions was enlarged to October 28, 1932. It was signed by the trial court on October 6, and the case was redocketed in this court, and the transcript filed on the following day. All of this occurred prior to the expiration of the term at which judgment was rendered. Under these circumstances we hold the bill of exceptions to be properly in the record.

It is first contended by appellants that the court erred in not allowing a portion of its claim for the hauling of dirt which it alleges was due under the contract in addition to the allowances made by the court. This contention involves a construction of the words "haul average" and "overhaul" as used respectively in items 1S and 2B in Schedule A of the contract. Appellee contended, and the trial court held that "average haul" meant 2,500 feet as an average for the total hauls, and that "overhaul" meant any haul in excess of the average haul, and that those terms applied to all dirt excavated from the race track proper, and also from the borrow pit. In other words, if the total length of all the hauls did not average more than 2,500 feet for each haul then there would be no overhaul. However, if the total hauls averaged more than 2,500 feet for each haul, then the Contractor was to be paid in addition to seventy cents for each cubic yard excavated and hauled, the further sum of two cents per cubic yard for each 100 feet the dirt was.

hauled in excess of the average haul of 2,500 feet. Appellants argue that the word "average" was used by the parties in the sense of maximum, and that the word "overhaul" was erroneously used in item 2B of the contract instead of "haul over" as used in item 2A of Exhibit B of the proposals, and that it was intended by the parties to mean any haul. Under that interpretation appellants contend that appellee was obligated to pay Contractor seventy cents for each cubic yard of earth excavated from the race track and hauled not over 2,500 feet, and in case any of the earth excavated from the race track was hauled more than 2,500 feet, the Contractor was to receive an additional sum of two cents for each cubic yard for each 100 feet the earth was hauled in excess of the 2,500 feet. With reference to the borrow pit, appellants contend that under item 2S of the contract the Contractor was entitled to seventy cents for each cubic yard excavated, and inasmuch as there was no express limitation of hauling distance in that item, they insist that under item 2B of the contract the Contractor was entitled to receive two cents per cubic yard for each 100 feet the earth was hauled regardless of the distance.

In order to clarify the intention of the parties, the trial court admitted in evidence the Contractor's original proposals in which, as shown in Exhibit B, the words now in controversy, or their variants, were first used by the Contractor. In the proposals the words "haul average of 2,500 feet" applied to all excavations both from the speed track and the borrow pits at a price of seventy cents per cubic yard for each unit; and item 2A was "for hauls over 2,500 feet mass average" at a price of two cents per cubic yard. Appellants insist, however, that the words "hauls over" in the proposal were erroneously changed to "over-haul" in the contract, although in all other respects the changes were intentional. They further claim that the limitation of 2,500 feet and the words "haul average" and "overhaul" cannot be applied to any items or units of the contract except those in which they appear. With these contentions we are not in accord. There is no evidence to support the contention that the parties used the word "average" in the sense of maximum, and they are not synonymous in any respect. We see no reason why the word "average" should not be given its plain, ordinary meaning, and when used in the combination of words and figures, "excavation * * * haul average 2,500 feet 70 cents per cubic yard," we think it means that ap-

pellee was to pay Contractor seventy cents per cubic yard for each yard excavated where the average haul of the entire amount did not exceed 2,500 feet. See Long v. Ottumwa Railway & Light Co., 162 Iowa 11, 142 N. W. 1008. That intention is quite manifest in the proposals submitted by the Contractor, and it was therein expressly applied to all excavations in the special borrow pits as well as in the race track.

We think the intention of the parties was the same when they executed the contract, for unless this be true, items 2H, 2S, and 2B of the contract are unintelligible. Especially is this true if, as appellants insist, each item or unit is to be literally construed without reference to any other item. Appellants, moreover, are not entirely consistent in demanding such a literal construction, for in their interpretation of the items last mentioned which deal with "special borrow" and "over haul," they freely and correctly use the word "excavation" from item 1S when in fact that word nowhere appears in the items which they thus seek to interpret. The result of appellants' construction, if correct, would be to allow the contractor seventy cents for each cubic yard excavated from the borrow pits, and the additional sum of two cents per cubic yard for each 100 feet for hauling the dirt thus excavated, regardless of the distance hauled. We think appellants' contention in this respect is not sound. It is hardly conceivable that the parties had any such intention, in view of the fact that the Contractor had proposed to excavate and haul the dirt from the borrow pits at the same price as from the bed of the track, and the record does not disclose that one was more difficult or expensive than the other. If it be conceded that the word "overhaul" was erroneously inserted in 2B of Schedule A of the contract, instead of the words "hauls over" in item 2A of Exhibit B of the proposals, we are unable to see how a correction in that respect would in any way benefit appellants, for the distinction sought to be drawn in their meanings seems to be imaginary rather than real.

■ Although not expressly stated, it would seem from appellants' argument that the words "hauls over" as used in the proposal were used by Contractor's engineers as a compound word, with a meaning of "all hauls" when applied to excavations from the borrow pits. However, it is to be observed that "hauls over" in the proposals is not used as one word or a compound word with a technical meaning, but it is used in connection with a specified distance in the phrase, "For hauls over 2,500 feet mass average," and clearly is not subject to any technical construction when thus used. It is also to be observed that if there were any obligation resting upon the Contractor to haul the earth excavated from the race track in excess of 2,500 feet, and any corresponding obligation upon appellee to pay for it, it is by virtue of construing items 1S and 2B in Schedule A of the contract jointly, and in that event it is quite obvious that the words "overhaul," or "hauls over" have no technical meaning. We think the court's construction of the words used in the items referred to is correct and gives effect to the intention of the parties at the time the contract was executed. Moreover, it is quite obvious that the Contractor confirmed that construction when it submitted the monthly estimate for work performed during July, 1926, in which was included an item of $9,728.50 for overhaul. At that time appellee stated to the Contractor that overhaul could not be figured until the entire work was completed, and the Contractor acquiesced, whereupon that item was deducted in the monthly settlement. Prior to that time the monthly statement contained no item of overhaul, and after that time the item was named in the monthly statements but no quantities were given. That conduct is consistent with appellee's contention, as adopted by the court, but it is not at all consistent with the contention which appellants now urge.

■ Another question raised by appellants relates to the removal of muck from the east portions of the race track, and from the land immediately adjoining it, for the purpose of forming drainage for the track. One part of that removed from the track proper was necessitated by the fact that the surface of that portion of the ground was higher than the level of the contemplated track; the remaining portion was removed from the bed of the track for a depth of twenty-eight inches and filled in with solid dirt to form a firmer foundation in order to make and retain a level surface on the east straightaway. All the muck removal was reported to appellee by the Contractor on its monthly estimates under the item 1S, which was excavation on the speed track, charged at the rate of seventy cents per cubic yard which was allowed by appellee. It was moved with slips or scoops drawn by mules or horses and wasted along the side of the track. Appellee credited the removal of this muck with a 30 foot haul as that was the approximate distance of its removal, although it was not placed in the embankments. The controversy arises over the fact that appellee

included the muck in the total excavation as a basis for computing the average haul. Appellants on the other hand contend that the removal of the muck was neither included nor contemplated in the contract, but that it was extra work to which haul distance should not be credited. It is true that muck was not expressly referred to in the contract, but neither were the characteristics of the other excavations specifically described.

The contract with relation to the speedway clearly contemplated excavation and embankments to grade, and drainage by ditches and gutters. It was clearly understood by the parties that the east straightaway was to be level throughout, and the evidence shows that in order to attain that result it was necessary to remove the muck and substitute solid earth. If the contract did not contemplate the removal of muck, then clearly the Contractor was not obligated to remove it, but he did remove it without contention and without a written order as for extra work, and charged and received the same rate that he charged and received for other excavation on the speed track. Under these circumstances there is substantial evidence to support the court's construction that the muck was to be treated as other excavation on the speed track, and should be considered in calculating the average haul.

In the construction of the speed track, the contractor, in order to shorten its hauls, constructed a "cross over" railway diagonally from the east straightaway to the west straightaway of the track, about midway between the north and south ends. The borrow pit was located inside the race track, just east of the north half of the west straightaway. In the construction of this cross over which was 2,200 feet in length, a certain amount of earth was used from the borrow pit for which excavation the contractor charged and was allowed seventy cents per cubic yard, but it made no charge for "haul over" as appellants interpret those words. Appellee on the other hand claimed, and its contention was approved by the court, that the excavation charge of seventy cents included a haul average of 2,500 feet, and, as the hauls did not amount to that distance, the amount of earth thus excavated was not subject to over haul and should be included in the total excavation for the purpose of determining the haul average.

A similar question was raised by appellants in relation to an alteration of a part of the hill road which was located less than 2,500 feet immediately west of the borrow pit, where earth was used which had been excavated from the borrow pit, and the court made the same ruling. We think these rulings were right. From a perusal of the contract, aided by a consideration of the proposals, it is quite obvious that excavation where there was to be no haul was to be figured at fifty cents per cubic yard, and the seventy cent rate applied where the average haul did not exceed 2,500 feet, and where it did exceed that amount, an additional two cents per cubic yard was to be charged for each 100 feet of haul in excess of the total hauls included in those averaging 2,500 feet. It is true that the rate of fifty cents per cubic yard does not appear in either the proposals or the contract except in relation to the hill road, but this is reasonably explained by the fact that it was thought by the parties that there would be no hauls in constructing the hill road because it was to follow the contour of the ground; and it was further thought that all excavations on the race track would require hauling because more than that amount would be required to make the fills. It later developed, however, that the muck excavated from the race track was not suitable for fills and had to be wasted along the side, and it further developed that an alteration in the grade of a portion of the hill road necessitated the hauling of earth from the regions of the race track. While these two items were not specifically mentioned in the contract, there is no good reason why they should not be governed in price by other items of the same nature which are mentioned in the contract. In arriving at this conclusion we are not abandoning the contract in favor of the proposals, but we are merely using the proposals to clarify the intention of the parties as to the use of certain terms in the contract. These proposals were put in evidence by appellants, and they were received by the court for the announced purpose of enabling it to construe the terms of the contract. A consideration of the contract and proposals and of the contractor's conduct with respect to its implied construction of the terms of the contract convinces us that the court's construction of the contract was correct.

It is further contended by appellants that the court erred in not calculating the total yards hauled upon the basis of the amount shown to be in the embankments rather than that in the total excavations. Ordinarily we think that would be a safe rule to follow, although in calculations of this nature absolute accuracy cannot be attained by any practical method. Appellants' Exhibit 15, however,

discloses that contractor's total yardage in the embankments exceeds the total excavations by 13,685 cubic yards, and Appellants' Exhibit 17 discloses that it charged an over haul for that amount. Whether the court considered that fact in rejecting the embankments as a basis for calculating yardage hauled we have no way of knowing, but it was a fact worthy of consideration. These exhibits were made some time after the work was completed. The court's findings accepted the contractor's monthly reports instead, and appellants are in no position to complain of the fact, nor have we the power to interfere.

Appellants also contend that the court's determination of the distances the dirt was hauled has no evidence to support it, and that the court should have adopted the method relied upon by appellants' witnesses of measuring from centers of mass of excavation to mass of embankments. Appellee's witness testified that he measured from mass to mass, and the court relied upon his testimony. This raised a question of fact which the court was at liberty to decide for itself, and we have no power under such circumstances to interfere.

It is contended by appellants that the court erred in giving credits to appellee which were not pleaded by it in its answer and cross complaint and which were contradictory to the stipulation of the parties. In these contentions appellants are in error. The answer and cross complaint constitute one instrument. It admits the contract and pleads payment, and by way of a counterclaim seeks to recover for "over haul" from the borrow pit, in the sum of $61,010.28 which appellee claims to have erroneously paid to the Contractor. This is the only item in the pleading for which appellee sought affirmative relief, and the court rejected it on account of failure of proof. Appellants, however, contend that the court allowed the item as a credit against what was lawfully due appellants under their construction of the contract. The court did nothing of the kind. It did not accept appellants' construction of the contract, and held that its terms did not warrant a recovery by them for the full amount claimed. The counterclaim was filed as a matter of precaution in case the court adopted appellants' construction of the contract, and appellee admits that there is nothing due it under the item of counterclaim providing the trial court's construction of the contract is held to be correct.

The only credits allowed by the court were for payments claimed to have been made by appellee and for credits claimed to be due under the contract. One payment related to the installation of a culvert. The total charge for this was $2,217.89, of which $752.40 was admitted to have been paid by appellee to the Elkhart Bridge and Iron Company. The court allowed a further credit of $1,063.41 for a payment made upon the contract by appellee to the Contractor. Appellee contends that this payment is proven by Exhibit T which is included in the record on the cross appeal. This exhibit is taken from appellee's books of account, and its admission in evidence was rejected upon appellants' objection, and we think properly so. It is not contended that instructions were given by appellee as to its application at the time of payment, and no other evidence on the subject appears of record. In the application of payments the law is well settled that in the absence of instructions by the payor, the payee may apply the payment as he chooses upon any debt owing to him by the debtor. This credit of $1,063.41 is not supported by any evidence and should not have been allowed. It is further contended that the court erroneously allowed appellee a credit for one half of the "effected savings" in the sum of $10,550.54, contrary to the stipulation. It cannot be denied that the Contractor's books of account and statements rendered showed "effected savings" in the sum of $22,003.24, and the contract provided that each party should be entitled to one half thereof. The complaint alleges "effected savings" in the sum of $902.16, and it is contended by appellants that the stipulation precludes appellee from claiming credit for more than $451.08, which appellants had previously allowed. Appellee's answer set forth this item in detail and asked credit specifically for one half of the amount omitted from the complaint, and we think the stipulation is not at all inconsistent with the court's action in allowing it. Nor was that ruling inconsistent with the disallowance of the counterclaim because the cross action made no reference whatever to "effected savings."

Appellants contend that the court erred in admitting in evidence Appellee's Exhibits I, J, K, L, M, N, O, R, and S. The basis of the objection is lack of authentication. They consist of engineers' notes and a topographical map and tabulations made from those notes, and were offered and admitted for the purpose of enabling the court to ver-

ify the facts presented by the defense. A perusal of the record pertaining thereto convinces us that they were sufficiently authenticated, and being material were properly admitted.

 Appellants next assert that the court erred in not allowing interest beginning thirty days after the work was completed instead of the date on which the complaint was filed. There is no hard and fast rule in fixing the date from which interest shall be allowed on an unliquidated debt arising out of contract, in the absence of any agreement regarding the matter. The court under such circumstances is to exercise its sound discretion. Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265. This we think has been done in the instant case and we cannot disturb the ruling in that respect.

 Appellants contend that the court erred in failing to find the facts specially and render conclusions of law thereon after promising to do so. In this respect appellants unintentionally take liberties with the record which are not warranted. The court made no such promise, and their request was not made until after all the evidence was introduced. This fact is sufficient to defeat appellants' request under the Indiana law. Tevis v. Hammersmith, 170 Ind. 286, 84 N. E. 337; Miller v. Lively, 1 Ind. App. 6, 27 N. E. 437. In the trial of a case at law without a jury, the federal statutes do not require the court to make special findings of facts, but the finding may be general or special. 28 USCA § 773; Southern Railway v. St. Louis Hay & Grain Co. (C. C. A.) 153 F. 728; Compania Transcontinental de Petroleo v. Mexican Gulf Oil Co. (C. C. A.) 292 F. 846; Griffen v. Thompson (C. C. A.) 10 F.(2d) 127.

 The St. Joseph Loan and Trust Company in its individual capacity contends that the court erred in denying relief to it. As an individual and as receiver it was acting in a dual capacity, and the interest of one was adverse to the other. Nevertheless, those interests were represented by the same attorneys. It was acting as receiver in violation of section 1303 of the Indiana statutes (Burns' Ann. St. 1926), and was consenting to its claim as an individual and seeking to have the court allow that claim in the absence of the general creditors, and presumably without their knowledge or consent. Under these circumstances the ruling of the court was right not only in defense of other creditors who might be interested, but also in the protection of its own integrity.

 Appellants allege that the court erred in denying a recovery upon the fourth clause of the second paragraph of the complaint which sought damages for delays occasioned by appellee in performance of the contract. This denial was based on the ground that such matter sounded in tort and was improperly joined with the suit in contract. We think this contention must be sustained. The matter charged arose out of the performance of the contract and was directly connected therewith, and was therefore properly joined with the other matter in the suit on the contract. Burns' Ann. St. Ind. 1926, § 288. See also Wood v. Fort Wayne, 119 U. S. 312, 7 S. Ct. 219, 30 L. Ed. 416; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86; City of Newcastle v. Dingle, 185 Ind. 626, 114 N. E. 221.

The court, in calculating the yardage excavated and hauled, stated in its memorandum opinion that it relied upon the testimony of appellants' witness Mr. Summy, and fixed those amounts as follows:

Monthly estimate 1-S...... 58,314 cu. yds.
Monthly estimate 2-S......117,281 cu. yds.
Back fill station 93-101..... 4,041 cu. yds.
Ditches station 45-66....... 1,748 cu. yds.
1-S station 109-112........ 430 cu. yds.
Muck removed............ 9,806 cu. yds.

It is agreed by both parties that the total thus given exceeds Mr. Summy's total by the amount of the third, fourth and fifth items, but they do not agree upon the amount for which the judgment should have been rendered. We think the court was in error in calculating this total, for it does not harmonize with the testimony of either appellants or appellee. The items referred to, so far as we have been able to determine from the very voluminous and disconnected record, are included in items one and two.

 Both parties have asked the court to amend the judgment to accord with their respective views, but this we are not at liberty to do. Fairmount Glass Works v. Cub Fork Coal Co., 287 U. S. 474, 53 S. Ct. 252, 77 L. Ed. ——. However, if the parties hereto will agree to an amendment of this judgment consistent with the rulings hereinbefore made, and shall file such agreement with this court within thirty days from this date, such amendment will be made, and the judgment affirmed. Otherwise, the judgment is reversed and the cause is remanded with leave granted to the court to correct any erroneous computations entering into the judgment, and if it deems necessary, to receive further evi-

dence in aid of such computation. In such event, the court is directed to find what damage, if any, was suffered by appellant on account of appellee's delay in performing its part of the contract as alleged in the fourth clause of the second paragraph of the complaint. If the trial court fails to make such amendments within ninety days from this date, a re-trial is ordered.